PEOPLE v BERKEY

Docket No. 88641. Decided March 11, 1991. On application by the people for leave to appeal, the Supreme Court, in lieu of granting leave, vacated the judgment of the Court of Appeals and remanded the case to that Court for further proceedings. Rehearing denied *post*, 1254.

Dennis J. Berkey was convicted by a jury in the Detroit Recorder's Court, Joseph A. Gillis, J., of first-degree premeditated murder and conspiracy to commit first-degree murder. The Court of Appeals, SAWYER, P.J., and WEAVER and NEFF, JJ., reversed in an unpublished opinion per curiam and remanded the case for a new trial, holding that the prosecutor had failed to authenticate certain audiotapes that had been admitted into evidence (Docket No. 106517). The people seek leave to appeal.

In an opinion per curiam, signed by Chief Justice CAVANAGH, and Justices BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, the Supreme Court *held:*

The authenticity of an exhibit is to be determined in light of MRE 901. A tape, or any other proposed exhibit subject to authentication under MRE 901, as a condition precedent to admission, must be shown to be what its proponent claims it to be. Authentication of audiotapes may be accomplished where, as in this case, a knowledgeable witness identifies the voices on the tape.

Reversed and remanded.

Justice LEVIN, dissenting, stated that leave to appeal should be denied or granted. Peremptory reversal should be reserved for those cases in which the law is settled and no factual assessment is required. In this case, factual assessment appears to be required, and the law is not settled; thus, peremptory disposition is not appropriate. Peremptory disposition does not provide a safe basis either for resolving individual cases or for promulgating precedent.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Edward Reilly Wilson, III,* Assistant Prosecuting Attorney, for the people.

*Thomas J. Trenta* for the defendant.

PER CURIAM. This is a murder case in which the trial court admitted into evidence some audiotapes that the victim recorded several months before her death. The tapes contain conversations with the defendant in this case, who was the victim's spouse.

The Court of Appeals reversed the defendant's convictions on the ground that the prosecutor had failed to offer sufficient evidence to authenticate the tapes. However, the Court of Appeals employed the incorrect standard for determining the authenticity of the tapes. Under Rule 901 of the Michigan Rules of Evidence, we are satisfied that the tapes were authenticated properly.

Therefore, we vacate the judgment of the Court of Appeals, and remand this case to that Court for consideration of the other issues raised by the defendant, including his remaining claims concerning the admissibility of the tapes.

I

On the morning of April 3, 1987, Theresa Berkey was found dead in her home. Her throat had been slashed.

At the time of her death, the victim had been involved in rancorous divorce proceedings with the defendant.[1] Though an obvious suspect, the defendant could not be directly linked to the killing.

Eventually a confession was obtained from a woman named Donna Shudell, who was romantically involved with the defendant. According to Ms. Shudell, the defendant had attempted without

[1] The victim filed for divorce in May 1986. A final hearing took place in March 1987, but the judgment had not yet entered when the victim was murdered.

success to find someone willing to perform a contract killing of his spouse. He then persuaded Ms. Shudell to do the deed. Though her nerve failed the first couple of times she was in the victim's house,[2] she eventually committed the murder on April 2, 1987.

According to Ms. Shudell, the initial plan had been to fake a robbery. She therefore took some of the victim's property and tried to make the victim's house look as though a robbery had taken place. That plan began to fail even as the murder was being committed, since Ms. Shudell herself was cut during the struggle, leaving her own blood at the scene.[3] The backup plan was to pretend that Ms. Shudell had acted in self-defense, when attacked by the victim. However, neither of these stories could withstand much scrutiny, and Ms. Shudell soon told the police that she had killed the victim intentionally, at the defendant's behest.

Having promised to provide such testimony at the defendant's trial, Ms. Shudell was permitted to plead guilty of second-degree murder. She received an agreed-upon sentence of from ten to twenty years in prison.

A lengthy jury trial took place in December 1987. The defendant did not testify.[4] In arguing the case to the jury, the defendant's attorney characterized Ms. Shudell as an admitted liar who had killed the victim on her own, and had manufactured her incriminating story in order to secure a shorter sentence.

---

[2] The victim was living in the house that she and the defendant had shared before they separated.

[3] Ms. Shudell obtained medical care by giving a false account of how she had obtained her injuries.

[4] The defendant presented several witnesses, mostly to demonstrate that he was not in the vicinity of the victim's house at the time of the murder. This testimony was of little significance, since the prosecution was not accusing him of personally killing his spouse.

At the conclusion of the trial, the defendant was convicted, as charged, of first-degree premeditated murder and conspiracy to commit first-degree murder. MCL 750.316, 750.157a; MSA 28.548, 28.354(1). On each count, the defendant received a term of life in prison.[5]

In an unpublished opinion, the Court of Appeals reversed the defendant's convictions and remanded the case for a new trial.[6] The Court later denied rehearing.

The prosecutor has applied to this Court for leave to appeal.

II

When the police began investigating the murder, they found in the victim's home approximately a dozen cassette tapes on which she had recorded conversations. Some were telephone calls. Others were conversations that had taken place at her home. A police officer later testified that the victim had a device attached to her phone that permitted the recording of telephone calls. No one knows how she managed to record conversations in her home.

The only person who knew about these tape recordings was a neighbor named Carol Fawaz. In November 1986, the victim asked Ms. Fawaz to listen to a couple of tapes. One had evidently been recorded shortly before Ms. Fawaz heard it replayed. Ms. Fawaz did not know when the other one was recorded, but the police thought it was recorded in July 1986.

---

[5] The trial court stated that each sentence was a mandatory sentence of life, without possibility of parole. But see *People v Jahner,* 433 Mich 490; 446 NW2d 151 (1989).

[6] *People v Berkey,* unpublished opinion per curiam of the Court of Appeals, decided December 6, 1989 (Docket No. 106517).

The prosecution selected two tapes to play for the jury. The tape that was made in November 1986 begins with a telephone conversation between the victim and the defendant, concerning the defendant's visitation with the couple's children. Later, the tape contains the defendant's arrival at the victim's house to pick up the children for a midweek visitation. This scene begins with an angry misunderstanding regarding the gist of the earlier telephone conversation. The tape then degenerates into a physical confrontation during which the victim was apparently hurled against a wall. To a background of children screaming that daddy shouldn't hurt mommy and mommy should do what daddy says, one hears the defendant issue a number of barely veiled threats against the victim's life. The defendant's fury is evident in his spoken voice.

After the November 1986 tape was played, the jury heard the earlier tape. This recording captures another scene at the victim's home. There is an argument about some of the defendant's personal effects that remained in the home. The argument includes statements that more directly threaten the victim's life. Partway through the taped conversation, one of the children arrives home. As the adults are shouting and the child is screaming, the defendant further threatens the victim's well-being.

Before these tapes were played for the jury, the assistant prosecutor stated his intention to present three tapes to the jury. Later he settled on the two that the jury heard. The defendant chose to introduce the third tape himself. It apparently contains a telephone conversation between the defendant and the victim. Evidently this tape was recorded sometime shortly before the March 1986 divorce

hearing, and contains statements that are more conciliatory.[7]

### III

The admission of these tapes had been foreseen by the defense, and a written motion to suppress admission was filed before the case was tried. During the course of the trial, the defendant also presented a great variety of objections to the taped materials.

The defense arguments included an assertion that the prosecution was unable to authenticate the tapes in the manner required by *People v Taylor,* 18 Mich App 381, 383-384; 171 NW2d 219 (1969), aff'd 386 Mich 204; 191 NW2d 310 (1971). In *Taylor,* the Court of Appeals adopted from an ALR article[8] a seven-part test to determine the admissibility of sound recordings. The Court of Appeals said in *Taylor* that there must be:

"(1) a showing that the recording device was capable of taking testimony,

"(2) a showing that the operator of the device was competent,

"(3) establishment of the authenticity and correctness of the recording,

"(4) a showing that changes, additions, or deletions have not been made,

"(5) a showing of the manner of the preservation of the recording,

"(6) identification of the speakers, and

"(7) a showing that the testimony elicited was voluntarily made without any kind of inducement."

---

[7] The third tape, introduced as a defense exhibit, was not included in the materials forwarded for this Court's review.

[8] Anno: *Admissibility of sound recordings in evidence,* 58 ALR2d 1024, 1027-1028, 1032.

On the first day of trial, the court indicated that the tapes would be admissible if a witness could identify the voices on the tape. Several days later, there was a more detailed discussion of this question. First, the prosecutor presented Ms. Fawaz who identified the voices of the victim, the defendant, and the children. This testimony took place outside the presence of the jury.

As defense counsel questioned Ms. Fawaz about the November tape, she testified that she was not present when the tapes were made, did not know what tape recorder was used, did not personally know who made the tapes, did not know whether the tapes contained entire conversations or only portions of conversations, did not know whether the tapes had been changed or altered in any way, had no way of personally determining whether the tapes had been changed or altered, and did not know whether the statements contained on the tape had been made voluntarily and without inducement.

After Ms. Fawaz testified concerning the July tape, there was additional argument from the attorneys, and this ruling from the trial court:

> *The Court:* Well *People versus Taylor* takes a rule that is set forth in 58 ALR Sec 1024, requires one, a showing that the recording device was capable of testimony.
>
> Seems to be no argument about that.
>
> A showing that the operator of the device was competent. Again it is self-authenticating in that there is a recording and quite a recording that the defense doesn't want in. Subsequent authenticity and correctness of the recording, the witness heard these recordings before.
>
> And a showing that changes, deletions have not been made. The witness believes that these are the same recordings she heard before.

A showing that the manner of preservation of the recordings, I think we heard the evidence technician and other people showing where they got them and six, the identity of the speaker and number seven the defendant concedes showing that testimony elicited was voluntarily made without any kind of inducement.

[*Defense Counsel*]: I do not concede that, just to correct the record.

*The Court:* I don't believe they are too remote. These are in November. The homicide took place on the second of April. It is therefore not too remote.

I will allow the recordings to be played to the jury this afternoon at 2:15.

When the jury returned to the courtroom, Ms. Fawaz again identified the voices on the tapes, and the tapes were played for the jury.

As we noted above, a third tape was played during the presentation of the defendant's proofs.

The contents of the tapes were a prominent feature in the closing arguments of the attorneys.

IV

In reversing the defendant's convictions, the Court of Appeals relied upon the seven-part test of *Taylor*. It explained that only one of the seven factors had been demonstrated by the prosecution:

In the case at bar, only the sixth factor, identification of the speakers, was established at trial. None of the other factors were established by the prosecution; particularly, there was no showing that the tapes had not been edited or altered or that defendant was not provoked or induced into making the statements.

For the above reasons, we conclude that the prosecution failed to establish a proper foundation

for the admission of the audiotapes. Accordingly, we conclude that the trial court erred in admitting the tapes into evidence and, therefore, defendant is entitled to a new trial. [*People v Berkey,* unpublished opinion per curiam of the Court of Appeals, decided December 6, 1989 (Docket No. 106517).]

In light of that determination, the Court of Appeals found it unnecessary to address most of the defendant's remaining appellate issues.[9]

V

The Court of Appeals opinion omits a very significant development in Michigan law, which occurred after the 1969 decision in *Taylor.* In 1978, this Court adopted the Michigan Rules of Evidence. Among those rules was MRE 901,[10] which includes these provisions:

Rule 901   Requirement of Authentication or Identification

(a) *General provision.* The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) *Illustrations.* By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

\* \* \*

(4) *Distinctive characteristics and the like.* Appearance, contents, substance, internal patterns,

---

[9] The Court did reject the defendant's argument that the probative value of some photographic exhibits was outweighed by their prejudicial effect. We have examined the photographs and we are in agreement with the Court of Appeals on this point.

[10] MRE 901 was cited in the defendant's written motion to suppress the evidence, and was discussed during the parties' arguments to the trial court.

or other distinctive characteristics, taken in con-
junction with circumstances.

(5) *Voice identification.* Identification of a voice,
whether heard firsthand or through mechanical or
electronic transmission or recording, by opinion
based upon hearing the voice at any time under
circumstances connecting it with the alleged
speaker.

(6) *Telephone conversations.* Telephone conver-
sations, by evidence that a call was made to the
number assigned at the time by the telephone
company to a particular person or business, if (A)
in the case of a person, circumstances, including
self-identification, show the person answering to be
the one called, or (B) in the case of a business, the
call was made to a place of business and the
conversation related to business reasonably trans-
acted over the telephone.

The quoted portions of MRE 901 are identical to
the corresponding provisions of Rule 901 of the
Federal Rules of Evidence.

The 1978 Michigan Rules of Evidence are bind-
ing on Michigan courts.[11] Their scope and applica-
bility are stated in MRE 101[12] and MRE 1101.[13]
Because the evidentiary rule stated in *Taylor* does

---

[11] 402 Mich lxxxviii (1978).

[12] These rules govern proceedings in the courts of this state to
the extent and with the exceptions stated in Rule 1101. A
statutory rule of evidence not in conflict with these rules or
other rules adopted by the Supreme Court is effective until
superseded by rule or decision of the Supreme Court. [MRE
101.]

[13] (a) *Rules applicable.* Except as otherwise provided in subdivi-
sion (b), these rules apply to all actions and proceedings in the
courts of this state.

(b) *Rules inapplicable.* The rules other than those with re-
spect to privileges do not apply in the following situations:

(1) *Preliminary questions of fact.* The determination of ques-
tions of fact preliminary to admissibility of evidence when the
issue is to be determined by the court under Rule 104(a).

(2) *Grand jury.* Proceedings before grand juries.

(3) *Miscellaneous proceedings.* Proceedings for extradition or

not appear in the Michigan Rules of Evidence, it is necessarily controlled by this Court's 1978 adoption of the rules.[14] *People v Kreiner,* 415 Mich 372, 377-378; 329 NW2d 716 (1982), reh den 417 Mich 1104 (1983).

For these reasons, we are satisfied that authenticity of an exhibit such as these tape recordings is to be determined in light of MRE 901. It follows that one may make a showing of authenticity in the manner undertaken in this case. That is, a tape ordinarily may be authenticated by having a knowledgeable witness identify the voices on the tape.[15] MRE 901 requires no more.

## VI

If authentication is to be determined in light of MRE 901, what of the seven-part test of *Taylor?*

rendition; sentencing, or granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise.

(4) *Contempt proceedings.* Contempt proceedings in which the court may act summarily.

(5) *Small claims.* Small claims division of the district court and the Common Pleas Court for the City of Detroit. [MRE 1101.]

[14] The committee note that accompanied MRE 901 as originally proposed (it was adopted without change) indicates that MRE 901(b)(4)-(6) was not intended to change prior Michigan law. This broad statement of the committee's general intent is not controlling with regard to the narrow question presented in this case. Moreover, the material found in the committee note does not assist our resolution of the present case. For instance, the cases cited with regard to MRE 901(b)(5) concern instances in which the victim of a crime identified an assailant with reference to his voice. *People v Sullivan,* 290 Mich 414; 287 NW 567 (1939); *People v Bozzi,* 36 Mich App 15; 193 NW2d 373 (1971), lv den 386 Mich 775 (1971). In those cases, witnesses were not asked to authenticate recordings that were to be played for a jury.

[15] As we have observed, these tapes include some recorded telephone conversations. In the context of this case, and mindful that MRE 901(b)(6) is only illustrative, we believe that the recorded telephone conversations in this case could be authenticated in the same manner as the other recorded conversations.

The test has existed in the law for many years,[16] and has been discussed by the Court of Appeals in a number of decisions that were issued after the 1978 adoption of the Michigan Rules of Evidence.[17] Further, some circuits of the United States Court of Appeals have continued to treat the test as controlling, notwithstanding the adoption of FRE 901.[18]

Certainly, the present case well illustrates that the elements of the seven-part test can be important considerations. One may contrast this case with the common situation in which a witness (frequently a police officer) is available to describe the manner in which the recordings were made, edited, and stored. Here, however, no such foundational information is available. Moreover, the person who was recording the tapes was very likely making them for her own benefit and for eventual

[16] The rule of *Taylor* appears to have its roots in a 1955 decision of the Georgia Court of Appeals. *Solomon v Edgar,* 92 Ga App 207, 211-212; 88 SE2d 167 (1955). In deciding *Solomon,* the Georgia court assembled the seven-part test from rules stated in a variety of earlier cases. The *Solomon* rule soon appeared in a number of federal decisions, beginning with *United States v McKeever,* 169 F Supp 426, 430 (SD NY, 1958), rev'd on other grounds 271 F2d 669 (CA 2, 1959).

[17] *People v Slaton,* 135 Mich App 328, 335; 354 NW2d 326 (1984), lv den 422 Mich 854 (1985); *People v Donald,* 103 Mich App 613, 618; 303 NW2d 247 (1981); *People v Karmey,* 86 Mich App 626, 632; 273 NW2d 503 (1978), lv den 406 Mich 889 (1979). None of these opinions discusses the relationship between MRE 901 and the seven-part test.

[18] See, e.g., *United States v McMillan,* 508 F2d 101, 104 (CA 8, 1974), cert den 421 US 916 (1975). Cf. *United States v Kandiel,* 865 F2d 967, 973-974 (CA 8, 1989), and *United States v O'Connell,* 841 F2d 1408, 1420 (CA 8, 1988), cert den 487 US 1210 (1988). The more common approach, apparently, is found in *United States v King,* 587 F2d 956, 961 (CA 9, 1978), where the United States Court of Appeals for the Ninth Circuit characterized the elements of the seven-part test as "useful, but not dispositive, guidelines for determining when a proper foundation for the introduction of sound recordings has been made." The Ninth Circuit said that "[u]ltimately, the trial court, in the exercise of its judicial discretion, must be satisfied that the recording is accurate, authentic, and generally trustworthy." See, generally, 5 Weinstein & Berger, Evidence, ¶ 901(b)(5)[02], pp 901-73 to 901-85.

use (or threatened use) against the interests of this defendant.[19]

While the elements of the seven-part test are important considerations, we believe that they are matters that should ordinarily be addressed to the finder of fact. It is axiomatic that proposed evidence need not tell the whole story of a case, nor need it be free of weakness or doubt. It need only meet the minimum requirements for admissibility. Beyond that, our system trusts the finder of fact to sift through the evidence and weigh it properly.[20]

If a tape, or any other proposed exhibit that is subject to the MRE 901 requirement of authentication, is shown to be "what its proponent claims," then it has been authenticated sufficiently.[21] In this case, the prosecution claimed that the tapes were recordings of conversations between the victim and the defendant. The prosecution, having shown these tapes to be what it claims them to be,[22] has provided authentication.

---

[19] In his brief to this Court, the defendant repeatedly implies that the tapes were unfairly made or edited. However, he offered no such proof in the trial court, nor does he tender any detailed allegations at this stage.

[20] See, for instance, anno: *Omission or inaudibility of portions of sound recording as affecting its admissibility in evidence*, 57 ALR3d 746, 749. The ALR editors say that "courts have applied a broad general rule that [a recording which is partially inaudible or which reproduces only a portion of a conversation] is admissible unless the inaudible portions or the omissions are so substantial as to render the recording as a whole untrustworthy." This rule is justified by analogy to the rule that a live witness, who has heard a portion of a conversation, may testify concerning the portion that was heard. The editors add that "[m]any courts, with or without expressly stating the general rule, have stated that the admission of a recording that is partially inaudible or that reproduces only part of a statement or conversation is largely a matter within the trial court's discretion."

[21] The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. [MRE 901(a).]

[22] In his brief, the defendant acknowledges that "there was no dispute that Mr. Berkey's voice was on the tape."

In so holding, we do not exclude the possibility that, on other facts or upon a different record,[23] elements of the seven-part test (or other relevant considerations) might lead to the exclusion of recorded conversations, notwithstanding testimony that identifies the voices on the tape. Depending on the circumstances, such an exclusion could be premised on a determination that the recording lacks authenticity,[24] or that it lacks probative value,[25] or that it is subject to exclusion notwithstanding its probative value.[26]

[23] Under the Michigan Rules of Evidence, preliminary questions concerning the admissibility of evidence are determined by the court. MRE 104(a). An accused may testify upon a preliminary matter, without being subject to cross-examination regarding other issues in the case. MRE 104(d). The hearing on such a preliminary matter takes place outside the presence of the jury "when the interests of justice require" or, when an accused is a witness, if the witness requests. MRE 104(c). In this case, the defendant chose not to testify during the short hearing concerning authenticity, which took place during the trial but outside the presence of the jury. Nor did the defendant seek a protective ruling to determine whether such testimony might later be used against him during the remaining portion of the trial.

[24] Recall that the detailed provisions of MRE 901(b) are simply "examples" that are offered "[b]y way of illustration only, and not by way of limitation . . . ."

[25] All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible. [MRE 402.]

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. [MRE 401.]

[26] Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. [MRE 403.]

VII

For the reasons stated in this opinion, we vacate the judgment of the Court of Appeals, and remand this case to that Court for consideration of the other issues raised by the defendant, including his remaining claims concerning the admissibility of the tapes.[27] MCR 7.302(F)(1).

CAVANAGH, C.J., and BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred.

LEVIN, J. I would grant or deny leave to appeal.

Both the length and analysis of the opinion signed by the majority show that the issue dealt with in the opinion may not appropriately be decided peremptorily.

I

I adhere to the view that peremptory reversal should be reserved for those cases in which the law is settled and no factual assessment is required.[1] In the instant case, factual assessment

---

[27] The defendant's motion for bond pending appeal is also considered, and it is denied.

[1] *Roek v Chippewa Valley Bd of Ed*, 430 Mich 314, 322; 422 NW2d 680 (1988) (LEVIN, J., separate opinion); *Grames v Amerisure Ins Co*, 434 Mich 867, 868-875 (1990) (LEVIN, J., dissenting); *People v Little*, 434 Mich 752, 769-770; 456 NW2d 237 (1990) (LEVIN, J., dissenting); *People v Wrenn*, 434 Mich 885, 885-886 (1990) (LEVIN, J., dissenting); *Dep't of Social Services v American Commercial Liability Ins Co*, 435 Mich 508, 515; 460 NW2d 194 (1990) (LEVIN, J., separate opinion); *Universal Underwriters Ins Co v Vallejo*, 436 Mich 872, 873-874 (1990) (LEVIN, J., dissenting); *People v Stephens*, 437 Mich 903, 903-910 (1991) (LEVIN, J., dissenting).

See *Schweiker v Hansen*, 450 US 785, 791; 101 S Ct 1468; 67 L Ed 2d 685 (1981) (Marshall, J., dissenting) ("A summary reversal is a rare disposition, usually reserved by this Court for situations in which the law is settled and stable, the facts are not in dispute, and the decision below is clearly in error"); *Leis v Flynt*, 439 US 438, 457-458; 99 S Ct 698; 58 L Ed 2d 717 (1979) (Stevens, J., dissenting) ("Summary

appears to be required[2] and the law is not settled. Peremptory disposition is not appropriate.

The majority apparently is of the opinion that the issue is significant and that it satisfies the requirements of the court rule (MCR 7.302[B][5]) because the decision of the Court of Appeals in the instant case conflicts with a decision of this Court, the promulgation of the Michigan Rules of Evidence. The appropriate course in such a case is generally to grant leave to appeal.

Peremptory disposition does not provide a safe basis either for resolving individual cases or for promulgating precedent. If leave to appeal were granted, counsel for the parties, and particularly counsel for Dennis Joseph Berkey, who prevailed in the Court of Appeals, would have an opportunity to attempt to persuade the justices, both in the appellee's brief and during oral argument, that the Court of Appeals reached the correct result. Even if counsel does not succeed in such an endeavor, an opinion might be written more narrowly than the peremptory disposition opinion.

## II

The opinion signed by a majority states that the "Court of Appeals employed the incorrect standard for determining the authenticity" of the audiotapes of conversations between Theresa Berkey and defendant recorded several months before her

---

reversal 'should be reserved for palpably clear cases of . . . error.' *Eaton v Tulsa,* 415 US 697, 707 [94 S Ct 1228; 39 L Ed 2d 693 (1974)] [Rehnquist, J., dissenting]").

[2] The trial judge was of the view that tapes introduced in evidence had not been edited because a witness testified that she had been asked by Theresa Berkey to listen to the tapes, and thought the recordings played to the jury were what she heard when Theresa Berkey played the tapes for her. The witness' testimony did not, however, exclude the possibility that the tapes had been edited before Theresa Berkey played them in the presence of the witness.

death. The majority states that it is "satisfied that the tapes were authenticated properly" under MRE 901. *Ante,* p 41.

The majority asserts that the Court of Appeals omitted "a very significant development in Michigan law, which occurred after the 1969 decision in [*People v*] *Taylor,*" 18 Mich App 381, 383-384; 171 NW2d 219 (1969), aff'd on other grounds 386 Mich 204; 191 NW2d 310 (1971), namely the adoption, in 1978, of the Michigan Rules of Evidence, among them MRE 901. *Ante,* p 48. The majority declares that "[b]ecause the evidentiary rule stated in *Taylor* does not appear in the Michigan Rules of Evidence, it is necessarily controlled by this Court's 1978 adoption of the rules." *Ante,* pp 49-50.

The majority sums up, "[f]or these reasons"— apparently because the rule of law stated in *Taylor* does not appear in the Michigan Rules of Evidence—"we are satisfied that authenticity of an exhibit such as these tape recordings is to be determined in light of MRE 901." Turning to the instant case, the majority states: "It follows that one may make a showing of authenticity in the manner undertaken in this case. That is, a tape ordinarily may be authenticated by having a knowledgeable witness *identify the voices on the tape. MRE 901 requires no more." Ante,* p 50. (Emphasis added.)

The analysis set forth in the opinion signed by the majority is simplistic and unpersuasive, and the conclusion there set forth, that MRE 901 requires no more than an identification of the voices on a tape, is probably incorrect.

III

Donna Shudell testified that she had been romantically involved with defendant Berkey and

had slashed his wife's, Theresa Berkey's, throat pursuant to a concert of action with him. Shudell pled guilty of second-degree murder and was sentenced to a minimum term of ten years in prison. Berkey was convicted of first-degree murder and conspiracy to commit first-degree murder,[3] and was sentenced to terms of life in prison without possibility of parole.

The prosecutor introduced audiotapes of purported acrimonious conversations between Berkey and his wife, Theresa. Berkey had unsuccessfully objected that the tapes had not been adequately authenticated because, among other reasons, there was no evidence that they had not been edited by Theresa Berkey or someone else. The Court of Appeals agreed with Berkey that the prosecutor had not established a proper foundation for the admission of the audiotapes, particularly because there had been "no showing that the tapes had not been edited or altered or that defendant was not provoked or induced into making the statements" recorded on the tapes.[4]

IV

MRE 901 provides:

> (a) *General provision.* The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support *a finding that the matter in question is what its proponent claims.*
>
> (b) *Illustrations.* By way of illustration only, *and not by way of limitation,* the following are examples of authentication or identification conforming with the requirements of this rule:

---

[3] MCL 750.316, 750.157a; MSA 28.548, 28.354(1).

[4] *People v Berkey,* unpublished opinion per curiam of the Court of Appeals, decided December 6, 1989 (Docket No. 106517).

\* \* \*

(5) *Voice identification.* Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker. [Emphasis added.]

Berkey conceded that the male and female voices on the tapes were his and his wife's voices. There was thus no issue, under MRE 901, concerning the identification of "a voice, whether heard firsthand or through mechanical or electronic transmission or recording." The issue was whether the audiotapes were authentic recordings of conversations between Berkey and his wife.

Berkey asserted, in effect, that "to support a finding that" the audiotapes, "the matter in question," "[are] what" the prosecutor, "[their] proponent," "claims," that it was incumbent on the prosecutor to produce evidence, not only that the voices on the tapes were his and his wife's voices, but also that the tapes had not been edited by Theresa Berkey or someone else.

The prosecutor introduced no evidence that the tapes had not been edited, and, thus, it is surely questionable whether the prosecutor satisfied the "condition precedent to admissibility" under MRE 901 requiring the production by the proponent of "evidence sufficient to support a finding that the matter in question is what its proponent claims."

It appears that the police obtained about a dozen tapes. The prosecutor played two tapes for the jury, and Berkey played a third tape. It does not appear whether the dozen tapes were all the tapes that were made by Theresa Berkey or whoever may have made them, or whether, rather, they were simply the ones whoever made the tapes chose to keep or that were found.

It does not appear whether Theresa Berkey or someone else edited the tapes, and, if so, how they may have been edited. It appears that there is a snippet of music in the middle of one of the tapes that were played to the jury—it does not appear how that occurred. Nor does it appear why that recording ends abruptly.

It does not appear whether Berkey may have said other things immediately before or after the conversations recorded on the tapes as introduced in evidence that might put what was recorded, or remained recorded, on the tapes in a different light. Nor does it appear whether Theresa Berkey said or gestured anything that might have put the recorded threats by defendant Berkey in a different context or light.

V

The opinion signed by a majority states that the seven-part test enunciated in *Taylor* is derived from cases in other jurisdictions[5] and that among the seven requirements are showings that no "'changes, additions, or deletions'" have been made and "'of the manner of the preservation of the recording.'"[6]

Although the seven-part test is not stated in MRE 901, it does not follow that the showings

[5] *Ante,* p 45.

[6] The Court of Appeals quoted from anno: *Admissibility of sound recordings in evidence,* 58 ALR2d 1024, 1027-1028 as follows:

"(1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement."

required under the seven-part test are not necessary to satisfy the "requirement of authentication," set forth in MRE 901, "a condition precedent to admissibility," under MRE 901, or that, absent such showings, the proponent has satisfied the requirement of MRE 901 that the proponent introduce evidence sufficient to support a finding that the matter in question is what its proponent claims.

It appears that the seven-part test may not expand or make more burdensome the "requirement of authentication" set forth in MRE 901, but merely explains, in the context of audiotapes, the showings required by MRE 901 concerning authenticity. The opinion signed by the majority acknowledges that the United States Court of Appeals for the Eighth Circuit and other circuits have seen the seven-part test as "useful" or "controlling," notwithstanding the adoption of FRE 901 on which MRE 901 is modeled.

Although it appears from the opinion signed by the majority that a search of the law of other jurisdictions was undertaken before it was written, the opinion cites no case where an audiotape was introduced absent evidence that it had not been edited. As set forth in the opinion, n 20, a partially inaudible tape may, in some circumstances, be admissible. There is, however, a difference between inaudibility and omission or addition. It does not appear whether, in cases approving the introduction in evidence of partially inaudible tapes, there was testimony by a person who made and retained possession of the tapes that they had not been edited; if so, those cases are not pertinent.

I have not researched the question whether the majority's conclusion that the authenticity of an audiotape may be established by a showing only that the voices are authentic is consistent with

case law generally construing FRE 901 and MRE 901, and comparable rules in other jurisdictions concerning the showings required to establish authenticity of evidence generally. In all events, the majority opinion does not reflect any consideration by the majority of the possible implication of the analysis set forth in the opinion concerning the proper construction of MRE 901 in other contexts, civil and criminal.

VI

Although the opinion signed by the majority concludes that an audiotape may be authenticated by having a witness identify the voices on the tape, and that MRE 901 "requires no more," the opinion acknowledges that the "elements of the seven-part test are important considerations . . . ." The opinion states, however, "we believe that they are matters that should ordinarily be addressed to the *finder of fact." Ante,* p 52 (emphasis added).

The Michigan Rules of Evidence provide that "the admissibility of evidence shall be determined by the *court* . . . ." MRE 104(a) (emphasis added).

If, as the majority states, there is an aspect of this "matter" that should be addressed to the jury as the finder of fact, it would then be the duty of the court to instruct the jury regarding its role in deciding that "matter."

In the instant case, the jury was not instructed by the judge regarding its role in deciding that "matter." To be sure, Berkey did not request an instruction thereon. But until today, *Taylor* set forth the applicable rule of law, which imposed on the proponent the burden of showing that there had been no editing of an audiotape before it could be introduced, and therefore there was no reason

for a lawyer representing a party resisting the introduction of an audiotape to request an instruction regarding the jury's role in deciding whether the tape was authentic.

Assuming that the jury has a role in deciding the authenticity of an audiotape, the question arises how the jury should be instructed regarding its role in making that determination. Absent the introduction of evidence by Berkey that the tape had been edited, possibly creating a factual issue, what would there be for the jury to decide? Could the jury decide that the tape had been edited without any evidence having been offered that it had been edited? If not, on what basis would a jury decide that it had been edited?

The majority's conclusion that an audiotape may be admitted in evidence solely on the basis of identification of the voices, without proof that the tape had not been edited, shifts to the person against whom an audiotape is offered, here the defendant Berkey, the burden of showing that the tape is not what the proponent claims it to be, a burden that the rule of evidence, MRE 901, relied on by the majority—which the majority asserts the Court of Appeals overlooked—imposes, at least in terms, on the proponent.

The majority's conclusion that MRE 901, requiring authentication as a condition precedent to admissibility, requires authentication only of the voices, and not of other aspects respecting the making and preservation of an audiotape, in effect substitutes for the seven-part test set forth in *Taylor*, which, again, is derived from cases in other jurisdictions, a rebuttable presumption that an audiotape is authentic when it has been shown that the voices on the tape are authentic.

The seven-part test is not, indeed, set forth in MRE 901. Neither, however, is such a rebuttable

presumption. It thus begs the question to state simplistically that "[b]ecause the evidentiary rule stated in *Taylor* does not appear in the Michigan Rules of Evidence, it is necessarily controlled by this Court's 1978 adoption of the Rules."[7] Nor does it "follow" from the truism that the authenticity of audiotapes "is to be determined in light of MRE 901" that audiotapes "ordinarily may be authenticated by having a knowledgeable witness identify the voice on the tape" or that MRE 901 "requires no more."

The opinion acknowledges in n 23 that preliminary questions concerning the admissibility of evidence are determined by the court, and observes that an accused may testify concerning a preliminary matter, outside the presence of the jury, without being subject to cross-examination regarding other issues in the case. The opinion continues that Berkey did not seek to testify concerning authenticity of the tapes. These observations also beg the question whether it is the burden of the proponent or of the person against whom audiotapes are being produced to establish whether they have been edited.

The seven-part test concerns the showings required before the preliminary requirement of authenticity is satisfied. Since the elements of the seven-part test are addressed to that preliminary question, those elements concern a question ordinarily to be decided by the court. I find it difficult to understand then why the majority "believe[s] that they are matters that should ordinarily be addressed to the *finder of fact*."[8] (Emphasis added.)

I agree with the following observations by the majority:

---

[7] *Ante,* pp 49-50.

[8] *Ante,* p 52.

It is axiomatic that proposed evidence need not tell the whole story of a case, nor need it be free of weakness or doubt. It need only meet the minimum requirements for admissibility. Beyond that, our system trusts the finder of fact to sift through the evidence and weigh it properly.[9]

Those observations do not assist in deciding what are "the minimum requirements of admissibility." Is it enough, as the majority today declares, to show that the voices are authentic, or must it also be shown that the tape itself is authentic, that it is an accurate recording of all that was said, and that nothing was added or edited out.

### VII

The question presented, whether the trial judge erred in permitting introduction of the tapes in evidence, is clearly a difficult question. There is understandable concern that unless the tapes are admitted, evidence that might be relevant and authentic will not be received in evidence.

I have not read the multivolume transcripts of Berkey's trial. It might appear, were leave to appeal granted and were the matter then plenarily reviewed in the context of all the evidence presented at the trial, that there is evidence that would support—possibly on a basis narrower than the basis set forth in the opinion signed by the majority—the trial judge's conclusion that the tapes had been adequately authenticated.

[9] *Ante,* p 52.