*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TITO JOSE,

        Defendant-Appellant.

UNPUBLISHED
September 2, 2021

No. 353179
Washtenaw Circuit Court
LC No. 18-000470-FH

Before: GADOLA, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of domestic violence, MCL 750.81(2). The trial court sentenced defendant to six months' probation. On appeal, defendant argues that the trial court abused its discretion when it made several evidentiary errors, that the prosecutor committed misconduct in his closing argument, and that the trial court's rulings and the prosecutor's comments in regard to an audio recording entered into evidence violated his right to a fair trial. We affirm.

This case arises from a domestic violence incident between defendant and his wife, the victim, Vidhya Thomas, at Aspen Chase Apartments in Ypsilanti, Michigan. At trial, one eyewitness, Mohammad Fuheem Dar (MFD),[1] and Cicily Joseph, the victim's relative, testified for the prosecution. MFD testified that, while doing laundry at a laundry facility at Aspen Chase, he heard the sounds of screaming and bodies being thrown against walls in an apartment above him. He also testified that, just a few moments later, he saw a woman in the parking lot running away from a man who was trying to hit her with a belt. Through Joseph's testimony, the prosecution admitted an audio recording that it claimed was of the first part of the altercation. Prosecution witnesses also included law enforcement personnel and a medical professional, Dr. Eric Tull. Defendant presented a self-defense claim. Although defendant did not testify, the victim

---

[1] Two of the eyewitnesses were Mohammad Fuheem Dar and Mohammed Hasan Dar. Given the similarity in their names, for ease of reference, we refer to them by initials rather than spelling out their full names each time that they are referred to.

testified on his behalf. Another eyewitness, Mohammed Hasan Dar (MHD), also testified on defendant's behalf.

First, we address several evidentiary issues that defendant raises that are unrelated to the audio recording. Although we agree with defendant that the trial court abused its discretion on all three of these evidentiary issues, we conclude that each error, even cumulatively, was harmless.

This Court reviews for an abuse of discretion preserved claims of evidentiary error. See *People v Bergman*, 312 Mich App 471, 482; 879 NW2d 278 (2015). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 483 (quotation marks and citation omitted). "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014) (quotation marks and citation omitted). The defendant bears the burden of demonstrating that the error resulted in a miscarriage of justice. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

Generally, all relevant evidence is admissible. MRE 402; *People v Vandervliet*, 444 Mich 52, 60-61; 508 NW2d 114 (1993). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; *Vandervliet*, 444 Mich at 60. Irrelevant evidence is not admissible. See MRE 402; *People v Adair*, 452 Mich 473, 481; 550 NW2d 505 (1996). However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "In general, hearsay—an out-of-court statement offered to prove the truth of the matter asserted—may not be admitted into evidence." *People v Green*, 313 Mich App 526, 531; 884 NW2d 838 (2015), citing MRE 801 and MRE 802.

During her direct testimony describing the incident, the victim testified as follows:

Because we arguing on the downstairs and, you know, after—I think the— we pushing and pulling on the downstairs [sic] and then after—at some point he— he loudly say stay away, like that. And then he put his hand on his forehead and, you know, he told me to stay away don't—you know like that—don't come to . . .

The prosecutor objected, reasoning that defendant's out-of-court statement "stay away" was inadmissible hearsay. The trial court agreed.

We conclude that the trial court's decision was an abuse of discretion. See *Bergman*, 312 Mich App at 482. Although the statement was not admissible under MRE 801(d)(2), "[t]hat our Rules of Evidence preclude the use of evidence for one purpose simply does not render the evidence inadmissible for other purposes." *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). Defendant's out-of-court statement to "stay way" was a command. Therefore, it was not hearsay. See *People v Bennett*, 290 Mich App 465, 483; 802 NW2d 627 (2010); *People*

*v Jones (On Rehearing)*, 228 Mich App 191, 204-205; 579 NW2d 82 (1998) (explaining that a command contains no assertion and cannot be hearsay).

We also conclude that the trial court abused its discretion when it allowed the prosecutor to elicit testimony about specific instances of MHD's substance abuse in the year between the incident in question and trial. The prosecution was permitted to seek admission of these instances under MRE 607 to challenge MHD's credibility. However, evidence sought to be admitted under MRE 607 is still subject to review under MRE 403. See, e.g., *People v Standifer*, 425 Mich 543, 556-557; 390 NW2d 632 (1986). All of these events happened months after the incident at the center of this case. The prosecution presented no evidence to support its assertion that subsequent substance abuse affects long-term recall. As such, the prosecution failed to demonstrate the relevance of these pieces of cross-examination. MRE 401. Moreover, with no evidence that these incidents could have affected his recall of the events at the center of this case, these incidents appear to have been not much more than a way to paint MHD as a drug and alcohol abuser. Therefore, even if minimally relevant, this testimony's probative value was likely substantially outweighed by its prejudicial effect in violation of MRE 403.

Additionally, we conclude that the trial court abused its discretion when it excluded on hearsay grounds the victim's testimony concerning Joseph's feelings about defendant and about whether Joseph told her what to tell law enforcement and Dr. Tull. Defendant sought to offer this testimony to demonstrate that Joseph was biased against him. Bias is almost always relevant. *People v Layher*, 464 Mich 756, 763; 631 NW2d 281 (2001). Joseph's credibility, having testified about the contents of the audio recording, was directly at issue in this trial. Testimony in regard to whether she had ill feelings toward defendant or directed the victim as to what to tell law enforcement and medical professionals could have aided the jury in determining whether to believe her testimony, which was key to the prosecution's case because the audio recording was offered as direct evidence of the beginning of the altercation. The testimony was also relevant impeachment evidence because Joseph denied ill feelings toward defendant and denied telling the victim what to say. Additionally, the victim's testimony on these points would not have necessarily been hearsay. The victim perhaps could have answered how she knew Joseph felt about defendant by testifying about Joseph's conduct toward defendant, not her statements.

However, we conclude that defendant fails to demonstrate that these errors were, more probably than not, outcome-determinative. See *Douglas*, 496 Mich at 565-566. This is true even when their cumulative effect is considered. See *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). Even if the victim were allowed to testify that defendant told her to "stay away" and the prosecution had not been allowed to impeach MHD for his substance abuse, these changes to the trial would not have served to refute MFD's testimony that the altercation began inside the apartment or that defendant chased the victim in the parking lot while swinging a belt at her. In regard to the prosecution's questions to MHD, even without eliciting testimony concerning his substance abuse on cross-examination, the prosecution was able to impeach MHD's credibility. MHD admitted that he did not know for sure that the knife he claimed the victim carried was the knife presented at trial. Additionally, MHD's testimony only covered the events in the parking lot. But MFD, and the victim, testified that the argument and altercation began inside defendant and the victim's apartment. In light of this additional evidence, whether defendant told the victim "to stay away" on the stairs and MHD's account of what happened in the parking lot did not speak to who was the initial aggressor. As to Joseph's alleged bias, on cross-examination, defense

counsel inquired of Joseph about any bias that she may have had. Joseph denied having any bias. Outside of attempting to have the victim testify about Joseph's feelings toward defendant, defendant presented no further evidence to impeach Joseph for bias.

Moreover, even if all three of the trial court's errors were removed from the trial, the jury would still have been left with Dr. Tull's testimony about the victim's injuries. It still would have viewed police bodycam footage, which also depicted injuries to the victim. And it still would have listened to the audio recording, which reflected the sounds of strikes and the victim screaming. Therefore, it is not more probable than not that, if these errors had not occurred, that the jury would have concluded differently.

Next, defendant argues that the prosecutor committed prosecutorial misconduct in his closing argument. This Court reviews de novo issues of prosecutorial misconduct "to determine whether the defendant was denied a fair and impartial trial." *Bennett*, 290 Mich App at 475. "Further, allegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *Id*.

During his rebuttal closing argument, the prosecutor argued as follows:

So, let's stop playing games. Remember what I say to you is not evidence. What this attorney says to you is not evidence. What is in evidence is what the witnesses who sat in that witness chair testified to or the exhibits that were admitted into court. My argument doesn't mean anything other than it's a way to explain to you all how I see the case and why the People believe that he's guilty of the crimes that are charged with [sic]. And, if my argument is backed up by what's been admitted into evidence, the testimony of the witnesses, and the exhibits then. I'm arguing what actually has been admitted into evidence and not playing games about what—

On appeal, defendant argues that the prosecutor committed misconduct when he stated, "I'm arguing what actually has been admitted into evidence and not playing games." This argument lacks merit.

Both the United States and Michigan Constitutions guarantee a citizen's right to due process of law. US Const, Ams V and XIV; Const 1963, art 1, § 17. Over a century ago, our Supreme Court noted that a prosecutor's duty is to ensure the integrity of the judicial process. *People v Evans*, 72 Mich 367, 383; 40 NW 473 (1888). Accordingly, a prosecutor "may prosecute with earnestness and vigor—indeed he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones." *People v Blackmon*, 280 Mich App 253, 268; 761 NW2d 172 (2008) (quotation marks and citation omitted). The prosecutor must seek justice and not merely seek to procure convictions. See *People v Jones*, 468 Mich 345, 354; 662 NW2d 376 (2003); *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). A prosecutor deprives a defendant of due process when the error is "so flagrant as to render the entire trial fundamentally unfair." *Blackmon*, 280 Mich App at 267.

This Court examines whether a prosecutor's remarks prejudiced a defendant's trial by examining the whole record and evaluating the prosecutor's conduct in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). "An otherwise improper remark may not rise to

-4-

an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001) (quotation marks and citation omitted). However, in *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008), this Court explained that "[a] prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." (Quotation marks and citations omitted; alteration in original.) The *Unger* Court explained that when a prosecutor does this, "he is in effect stating that defense counsel does not believe his own client." *Id*. (quotation marks and citation omitted). Such an argument "undermines the defendant's presumption of innocence" and "impermissibly shifts the focus from the evidence itself to the defense counsel's personality." *Id*. (quotation marks and citation omitted). It is also "improper for a prosecutor to make a personal attack on defense counsel, suggesting to jurors in closing argument that counsel is intentionally trying to mislead them." *People v Light*, 480 Mich 1198, 1198; 748 NW2d 518 (2008).

In this case, we conclude that the prosecutor did not commit misconduct in his closing argument. See *Bennett*, 290 Mich App at 475; see also *Unger*, 278 Mich App at 236. It does not appear that the prosecutor's comment was a personal attack on defense counsel. Rather, it appears that the prosecutor was responding to defendant's closing argument. The challenged comment was made during rebuttal and the prosecutor was in the midst of discussing reasonable doubt. Earlier, during his closing argument, defendant devoted much of his time to exploring inferences the jury could reach from the evidence presented. Indeed, the prosecutor objected several times to defendant's closing argument to what he regarded as mischaracterizations of evidence and defendant arguing facts not in evidence. At one point, the trial court even suggested that defendant rephrase his arguments in regard to inferences to include phrases like "I suggest" or "I submit." In light of the context of the prosecutor's statement and defendant's closing argument, even if the comment were inappropriate, it does not warrant reversal.

We now address several arguments defendant raises that arise from the prosecution's presentation of an audio recording that it claimed reflected the first part of the altercation between defendant and the victim. First, defendant argues that the trial court abused its discretion when it admitted the audio recording because the prosecution did not meet its burden to authenticate it under MRE 901. We disagree.

In addition to the general rules of evidence discussed earlier, to be admissible at trial, evidence must be authenticated. *People v McDade*, 301 Mich App 343, 352; 836 NW2d 266 (2013); MRE 901(a). Historically, our state's courts employed a seven-factor test to determine the authenticity of sound recordings:

> (1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement. [*People v Taylor*, 18 Mich App 381, 384; 171 NW2d 219 (1969) (quotation marks and citation omitted).]

Then, following the adoption of the Rules of Evidence, in *People v Berkey*, 437 Mich 40, 50; 467 NW2d 6 (1991), our Supreme Court held that MRE 901 generally controls whether audio recordings are properly authenticated in order to be admitted. MRE 901(a) provides that, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The *Berkey* Court explained that "a tape ordinarily may be authenticated by having a knowledgeable witness identify the voices on the tape." *Berkey*, 437 Mich at 50. "MRE 901 requires no more." *Id*. The Court further explained that, "If a tape, or any other proposed exhibit that is subject to the MRE 901 requirement of authentication, is shown to be 'what its proponent claims,' then it has been authenticated sufficiently." *Id*., quoting MRE 901. Discussing the continued relevance of the *Taylor* test, the *Berkey* Court explained:

> While the elements of the seven-part test are important considerations, we believe that they are matters that should ordinarily be addressed to the finder of fact. It is axiomatic that proposed evidence need not tell the whole story of a case, nor need it be free of weakness or doubt. It need only meet the minimum requirements for admissibility. Beyond that, our system trusts the finder of fact to sift through the evidence and weigh it properly.

> If a tape, or any other proposed exhibit that is subject to the MRE 901 requirement of authentication, is shown to be "what its proponent claims," then it has been authenticated sufficiently. In this case, the prosecution claimed that the tapes were recordings of conversations between the victim and the defendant. The prosecution, having shown these tapes to be what it claims them to be, has provided authentication.

> In so holding, we do not exclude the possibility that, on other facts or upon a different record, elements of the seven-part test (or other relevant considerations) might lead to the exclusion of recorded conversations, notwithstanding testimony that identifies the voices on the tape. Depending on the circumstances, such an exclusion could be premised on a determination that the recording lacks authenticity, or that it lacks probative value, or that it is subject to exclusion notwithstanding its probative value. [*Id*. at 52-53.]

The prosecutor represented that the recording was "the actual assault that's taking place, or at least the first part of the assault." In his offer of proof, the prosecutor represented that the recording "was turned over to law enforcement from the victim" and that the "victim gave it to law enforcement because it was a recording of the incident leading up to the 911 call" made by MFD. The prosecutor further represented that Joseph would testify that she "received this recording from the victim and turned it over to the Sheriff's Department, that she listened to the recording, that she recognizes the voices, that she understands the language." Before the recording was played for the jury, Joseph testified that the victim played the recording for her on the victim's phone while at Joseph's residence two days after the incident. The victim sent her the recording. And then Joseph gave the recording to a police officer because the victim "felt that it was good to show the cops." Joseph testified that she heard defendant's and the victim's voices on the recording and that she understood their language. She also described what defendant said in the

first part of the recording. Therefore, the prosecution met its burden under MRE 901 to admit the audio recording. See *Berkey*, 437 Mich at 50.

Next, defendant argues that the trial court abused its discretion when it denied a request for a hearing on the second day of trial to discuss whether Joseph's "hearsay statements" about the contents of the audio recordings were inadmissible. Before trial, defense counsel moved in limine to exclude the audio recording. The trial court held a hearing on the motion, taking several of the issues under advisement. Before voir dire on the first day of trial, the parties argued the motion. Defendant argued that Joseph "certainly can't testify as to what another person told her to lay a foundation, it would be hearsay." In response, the prosecutor argued:

> As to where the recording came from and what that witness did with it, 11.01(B)[2] as the Court is aware, that hearsay is admissible for preliminary questions of fact. And, so if we're having that witness testify about how she got the recording and what she did with the recording then the People believe that will be satisfied, the foundational basis will be satisfied.

After further discussion about hearsay, defense counsel argued:

> And, I don't believe that the—that the court rule or the rules of evidence provide that the foundation for a primary piece of evidence is preliminary matter. Perhaps it might be for a preliminary examination but this is trial and it's not preliminary, that would be substantive.

The trial court denied the motion, but also stated that "obviously the witness can't say that the victim gave this to me and said this is the recording of what happened on that night. That would be hearsay."

On the second day of trial, defense counsel requested that the trial court hold a hearing outside the presence of the jury under MRE 104(c) to determine if the prosecution would be able to lay a proper foundation for the admission of the audio recording without eliciting hearsay from Joseph. The trial court appeared to have been frustrated by defendant's request, stating "Why am I going to have—why am I going to hear it again? I already heard it yesterday and ruled on it." Defense counsel responded that, yes, the trial court ruled on the matter but that defendant was requesting that the prosecution establish the foundation of the audio recording, presumably through hearsay statements, outside the presence of the jury. The prosecutor responded, stating "I made an offer of proof and if the Court's satisfied with that offer of proof you can make that determination. The witness is here." The trial court then stated:

---

[2] It appears that the prosecutor referred to MRE 1101(b)(1), which provides that the rules of evidence (with an exception for privileges) do not apply to "[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Rule 104(a)."

I'm satisfied. I ruled yesterday. You can make whatever objection you want at the time based upon whatever foundation is laid. Thank you. Sit down. I don't usually like to have people argue the same motion that I already ruled on yesterday."

Then, during direct examination, the prosecutor asked Joseph why the victim gave her the audio recording. Defense counsel objected on hearsay grounds. The prosecutor responded, arguing that Joseph's answer was "not being offered for the truth of the matter asserted, only to show what the witness did and why she did it." The trial court ruled that "[s]ubject to that," Joseph could answer. As discussed earlier, Joseph testified that the victim "felt that it was good to show the cops."

On appeal, defendant argues that the trial court abused its discretion when it denied his request for a hearing outside the presence of the jury to determine the audio recording's authenticity and reliability. Defendant argues that the prosecutor's argument that Joseph's testimony in regard to why the victim gave her the recording "mischaracterizes the hearsay rule and was intended to mislead the jury." Defendant highlights that, during the first argument on the motion, trial "[c]ounsel noted the risk that the jury would not be able to differentiate the purpose for which hearsay testimony regarding the recording was offered, and consequently the jury would consider [Joseph's] hearsay as substantive evidence." Defendant argues that the prosecutor's "true intention" was laid bare in his closing argument when he stated "[Joseph] gets it from [the victim] because [the victim] wants her to give it to the police."

Defendant fails to demonstrate that the trial court abused its discretion when it allowed Joseph to testify that the victim "felt that it was good to show the cops" the audio recording. Defendant's entire argument hangs on Joseph's testimony constituting hearsay. It was not. See MRE 802. As the prosecutor argued, Joseph's testimony appeared to be offered to show why Joseph gave the recording to law enforcement as part of the prosecution's attempt to authenticate it, not to prove the truth of what the victim said. It is also not clear that there is an out-of-court statement in this line of Joseph's testimony. Joseph merely stated a feeling or desire that the victim had, not how she knew the victim's feeling through the victim's words. Because the statement was not hearsay, the remainder of defendant's argument collapses.

Next, defendant argues that the trial court committed reversible error when it refused to give a curative instruction after the prosecutor committed misconduct in his opening statement. We disagree.

During his opening statement, the prosecutor maintained as follows:

You'll hear testimony from the cousin of Vidya Thomas, Cicily Joseph, and she'll testify, among other things, that she came to the apartment that evening after the assault was reported, took her cousin Vidya Thomas to the hospital for treatment. She'll talk about getting a recording from Vidya that Vidya wanted to have turned over to the Sheriff's Department for their investigation and the audio recording— audio recording captures part of this assault, part of this incident.

After opening statements, the jury was dismissed for the day. While still on the record, defense counsel requested a curative jury instruction because, as he argued, the prosecutor violated the trial court's order (or his understanding of it) that Joseph would not be able to testify what the victim

told her about the recording.  The trial court denied the request.  It stated: "My—my admonition was based upon the fact that if she said what the contents of the thing was that it would be hearsay.  Just the fact that she said turn it over to law enforcement, I don't find that to be a problem."  On appeal, defendant argues that the prosecutor committed misconduct with the challenged comment that Joseph could not testify about hearsay in laying the foundation for the recording's admission.  The prosecution does not respond to this argument.

Defendant's argument lacks merit.  Defendant's assumption that the prosecutor's opening statement violated the trial court's order may be a mischaracterization of the record.  The trial court stated that "obviously the witness can't say that the victim gave this to me and said this is the recording of what happened on that night.  That would be hearsay."  On the basis of the trial court's response to defense counsel's request for a curative instruction, it appears that defense counsel misunderstood the trial court's "order," and defendant continues with this misunderstanding on appeal.  Accordingly, it is not at all clear that the prosecutor violated the trial court's order, if it even gave one.  And because the prosecutor did not violate the trial court's "admonition," as it called it, the trial court did not abuse its discretion by granting a curative instruction.

In sum, we conclude that the trial court abused its discretion on three evidentiary questions.  However, these errors were harmless.  The prosecutor did not commit prosecutorial misconduct in his closing argument.  We reject defendant's arguments arising from the trial court's admittance of the audio recording.

Affirmed.

/s/ Michael F. Gadola
/s/ David H. Sawyer
/s/ Michael J. Riordan