*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 20, 2019

Plaintiff-Appellee,

v

No. 341451
Macomb Circuit Court
LC No. 2016-002231-FH

DANNIE VICENTE HERNANDEZ,

Defendant-Appellant.

Before: SAWYER, P.J., and O'BRIEN and LETICA, JJ.

PER CURIAM.

Defendant was convicted by a jury of using a computer to commit a crime, MCL 752.796, and three counts of possession of child sexually abusive material, MCL 750.145c(4)(a). He was sentenced to 45 days in the Macomb County Jail (with credit for one day already served) followed by five years' probation. He now appeals as of right and we affirm.

## I. FACTUAL BACKGROUND

On April 21, 2016, defendant and his wife Kelly Hernandez had an argument in which Kelly accused defendant of viewing child pornography on a cell phone. Both defendant and Kelly called the police and two police officers, Paul Sorbo and Jordan Haughee, responded. Eventually, defendant gave the police a black cell phone with a cracked screen. Kelly gave them her pink cell phone and an LG cell phone that she retrieved from a kitchen cabinet. Haughee observed two download notifications on the LG cell phone; he looked in the download folder and saw several images that he believed were child pornography. Defendant denied that the LG cell phone was his or that, to his knowledge, he had even touched it; he claimed that Kelly "was trying to set him up." Defendant provided a written statement explaining that he

> fell asleep on the toilet. My wife slapped my face and woke me up and told me she wants me out. She threatened me and said if I don't go she would call the police. I said call them, I'm not going, so she did. She said she found a phone with child porn on it and that she would tell them it's mine. I called police to see what I should do. I believe she wants to be with another man and this is why she

-1-

is doing this. I consent to the computer and the phones to be taken by police. It's late and I would like to add more after I get some sleep.

Detective Charles Johnson did forensic analyses on the cell phones. No fingerprints or DNA evidence was found on the LG cell phone. Johnson did discover adult pornographic recordings and images, along with several images of child sexually abusive material, which he described as "[p]hotos depicting a person under the age of 18 who's engaging in sexual activity with someone in a position to effect . . . sexual gratification on the part of the viewer." Johnson discovered two audio recordings from April 21, 2016 on Kelly's cell phone. In the recordings, Kelly accused defendant of viewing child pornography and threatened to tell the police. Defendant repeatedly asked Kelly to return "his phone." When she told him he was exploiting children by looking at child pornography, defendant responded by saying he had been abused as a child. When she rejoined that she had been molested as a child, but did not watch "kiddie porn," defendant asserted that he had never gone for help because he was too messed up. Defendant claimed that his responses were actually references to his diabetes problem, which was what had caused him to fall asleep in the bathroom that night.

Johnson determined that Cricket Wireless was the cellular service provider for the prepaid LG cell phone, that the subscriber's name was Lynn Cross, and that the address given for the subscriber was the home of defendant's ex-girlfriend. Johnson was unable to locate Lynn Cross, but at trial defendant testified that she was his daughter. He also claimed that he had discovered that the LG cell phone actually belonged to his 10-year-old son.

At trial, defendant testified that he had divorced Kelly shortly after this incident. He also stated that she had mental problems that affected her behavior. He claimed that on the night in question he had fallen asleep in the bathroom and awoke when Kelly slapped him and accused him of viewing child pornography. He claimed he did not know what she was talking about. He denied that he viewed pornography, that he had downloaded or seen the images on the LG cell phone, or that he owned that cell phone. He further claimed that the "phone" he was asking her to return to him on the audio recording was his own cell phone—the one with the cracked screen.

Following defendant's conviction, he filed a motion for a new trial and submitted a letter to the judge and a sworn affidavit from Kelly claiming that defendant was not guilty. The trial court denied defendant's motion.

## II. NEWLY DISCOVERED EVIDENCE

Defendant first claims that the trial court erred by denying his motion for a new trial based on Kelly's affidavit. "This Court reviews a trial court's decision to grant or deny a motion for a new trial for an abuse of discretion." *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018), citing *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted). We find no such abuse of discretion.

Regarding motions for a new trial based on newly discovered evidence, our Supreme Court has stated:

> In order for a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." [*Johnson*, 502 Mich at 566, quoting *Cress*, 468 Mich at 692.]

In denying defendant's motion for a new trial, the trial court noted that Kelly had said the phone was not defendant's but she acknowledged that he had access; she admitted that she found the cell phone in the bathroom where defendant was asleep. Also the court noted that Kelly did not "delineate why she believes that he did not download these pornographic images." The court identified the critical issue as being "whether he had access" and "had possessed the phone at some point and downloaded these images." The court observed that defendant did not have to own the cell phone in order to download the images. The court also found it significant that when confronted about the cell phone, defendant did not deny that it was his, but instead sought to justify his behavior by noting that he had been molested as a child. The court concluded that the evidence Kelly presented was not newly discovered, was cumulative, and would not render a different result probable on retrial, and that defendant could have, with reasonable diligence, produced the evidence at trial.

In support of his motion for a new trial, defendant submitted Kelly's letter and affidavit. The letter states in pertinent part:

> 1. I would like to confess that my husband is not guilty of the crime he went to trial for, I am the only key witness.
>
> 2. The phone that was surrendered to authorities was not his.
>
> 3. During the incident that occurred we were having a domestic marital fight, out of anger at the moment our environment got out of control. I was babbling mania. My husband was making sassy comments to me because he was trying to diffuse the situation. Any statements that the trial is holding against my husband was [sic] made from sarcasm, because what I accused him of is definitely not my husband's character and I should have known better.
>
> 4. We were divorced and we are now remarried.
>
> 5. We have a blended family of 8 children. We know for a fact that the phone did not belong to my husband.
>
> 6. I would have come forward sooner but due to the stress of this situation I needed medical help and counseling. I have received that and now I am stable enough to present this statement.

7. If need be, I would like the opportunity to present to you what really happened.

8. I am requesting this verdict be overturned.

The statement that defendant is not guilty is a statement of Kelly's opinion. Her assertion that she is "the only key witness" is not true; the four witnesses who did testify at the trial were just as "key." Her second statement presumably refers to the LG cell phone; that it was not defendant's was already established at trial, so this is not newly discovered evidence. Regarding her third statement, that she and defendant were having a marital fight was established at trial, so it is not newly discovered. Her claim that defendant was making "sassy" comments to defuse the situation is an opinion; additionally, defendant made this claim at trial, so Kelly's assertion was not newly discovered evidence. Kelly's claim that "any statements that the trial [court] is holding against my husband [were] made from sarcasm" is a statement of opinion; moreover, Kelly does not identify whether she means *her* statements or *defendant's* statements from the audio recording. Finally, her assertions that these statements were not reflective of her husband's "character" and that she "should have known better" are again statements of opinion. Her statement that they were divorced but are now remarried is a statement of fact, but it seriously impugns her credibility since it may be expected that if she remarried him she wishes to support him. Her next assertion—that they have a blended family of eight children—is a fact, but it is not newly discovered and, in any event, it is irrelevant to defendant's guilt or innocence. The associated claim that "We know for a fact that the phone did not belong to my husband" is a matter that was already established at trial. The police could not trace the prepaid LG cell phone to defendant and the subscriber's name was Lynn Cross. Therefore, that "fact" was not newly discovered. The next statements, concerning Kelly's medical and mental health history, are partly fact and partly opinion, but they are not newly discovered. There was testimony about this at trial, and, in any event, it is irrelevant to defendant's guilt or innocence. Kelly's assertion that she would like to present "what really happened" is unsupported by any facts and is not relevant; what would be relevant are the details to which she might testify, and she chose not to reveal those details. Her final request to have the verdict overturned is not a relevant fact.

Kelly's affidavit essentially tracks her letter. She acknowledges that she is married to defendant, but that at the time of the incident they were in a "vitriolic and hard-fought divorce." She acknowledges that she was suffering from "severe mental problems" and alleges that they "grossly affected [her] thought processes." She admits finding the cell phone that had child pornography on it, and that she assumed "without further facts in support of [her] assumption" that the cell phone belonged to defendant "because it was found in the bathroom where he was asleep." She admits that she awakened him and confronted him "with all sorts of accusations" and that she decided to record the conversation. She asserts that his answers in this recorded conversation "were typical of the kinds of things he would do when I was ranting in an attempt to calm me down" and that "he would agree to whatever I had to say," and later she "would come to [her] senses and realize he was only agreeing . . . to calm [her] down." She claimed that she had no reason to believe the cell phone was defendant's; there were lots of cell phones around the house "and [they] are freely exchanged." She opined that it was "certainly possible that one of the children or their friends downloaded this material by accident" and did not want to admit it. She then opined that a "serious injustice" had been done because she knew that defendant "does not and did not possess materials of this sort"; she "allowed this to go on for

-4-

some time without realizing the serious damage it was causing," including "the potential for unjust and unfair imprisonment" of defendant. She acknowledged that the prosecutor and the police had approached her on numerous occasions to testify and that she refused because she was afraid the "falsity of [her] testimony would be discovered" and because she was "mentally disabled at the time." She asserted that she had now "returned to a degree [of] normalcy in [her] mental health and she realized that [her] relationship to [defendant] and keeping our family together is of paramount importance." She then repeated that she and defendant had remarried and admitted that she was "making this statement now in hopes to reconcile the situation caused by [her] misleading statements in relation to what is actually true."

These statements consist of opinions and facts that were either already disclosed at trial or are irrelevant to the question of defendant's guilt. Some do not assist defendant. For example, Kelly asserts that she found the cell phone in the bathroom where defendant was asleep. This establishes that he had access to the cell phone and reinforces the circumstantial evidence of his possession. She presents no basis for knowing that defendant did not download pornography to the cell phone. There were also reasons why her credibility was at issue. "In order to determine whether newly discovered evidence makes a different result probable on retrial, a trial court must first determine whether the evidence is credible." *Johnson*, 502 Mich at 566-567, citing *Cress*, 468 Mich at 692-693. Kelly said she was mentally disturbed at the time of the incident and afterwards. Also, she remarried defendant and admits she is making her statements based on the importance of her relationship with defendant and of keeping her family together. That she clearly desires to help her husband makes her credibility suspect. Accordingly, neither the letter nor the affidavit supports defendant's claim that there is newly discovered evidence that will make a different result probable on retrial.

Finally, while the prosecutor chose not to compel Kelly to appear and testify at trial—a decision that defendant concurred in—nothing prevented defendant from calling Kelly as a witness and having the court compel her presence. Therefore, his claim that her testimony is now newly discovered and that he could not have, using reasonable diligence, produced Kelly at trial is unsupported. Defendant has failed to establish that the trial court abused its discretion by denying his motion for a new trial based on his wife's letter and affidavit.

### III. AUTHENTICATION OF AUDIO RECORDING

Defendant next claims that the audio recording made by Kelly was not properly authenticated and therefore should not have been admitted into evidence. We find no error.

MRE 901 provides, in relevant part:

(a) **General Provision**. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) **Illustrations**. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

* * *

(5) *Voice Identification.* Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

*People v Berkey*, 437 Mich 40; 467 NW2d 6 (1991), holds that authentication of an audio recording (in that case a tape recording) is controlled by MRE 901. Our Supreme Court stated: "[A] tape [recording] ordinarily may be authenticated by having a knowledgeable witness identify the voices on the tape. MRE 901 requires no more." *Id.* at 50 (footnote omitted).

In this case, there was one male and one female voice on the audio recordings. Officer Haughee recognized the male voice as defendant's and believed the female voice was Kelly's—he was almost "100 percent certain." Detective Johnson, who had spoken with Kelly on the telephone between 5 and 10 times, testified that the female voice was her voice. Additionally, during the course of the recorded conversation, the male voice addressed the female as "Kelly" and the female addressed the male as "Dannie" or "Dan." Finally, at one point in the recording, the male voice states: "Did you ever ask me, Dannie Hernandez, are you a nice man[?]"

As the trial court correctly determined, the testimony by persons familiar with Kelly's and defendant's voices properly authenticated the voices on the audio recording. Additionally, the voices on the tape "self-authenticated" by identifying each other as Kelly and Dannie. Defendant did not present any evidence at trial that disputed these identifications. As our Supreme Court stated in *Berkey*, 437 Mich at 52:

> If a tape, or any other proposed exhibit that is subject to the MRE 901 requirement of authentication, is shown to be "what its proponent claims," then it has been authenticated sufficiently. In this case, the prosecution claimed that the tapes were recordings of conversations between the victim and the defendant. The prosecution, having shown these tapes to be what it claims them to be, has provided authentication. [Footnotes omitted.]

The prosecutor in this case contended that the audio recording was of a conversation between Kelly and defendant. The recordings were recovered from a cell phone that belonged to Kelly, and the recordings were made on the date of the incident. The evidence presented was "sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). Therefore, the audio recordings were properly authenticated pursuant to the requirements of MRE 901 and the trial court did not abuse its discretion by admitting them.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next claims his trial counsel was ineffective for failing to object to admission of the audio recordings on the basis of hearsay, and for stipulating that Kelly was unavailable to testify. Defendant has failed to establish ineffective assistance of counsel.

"Defendant failed to preserve this issue by moving in the trial court for a new trial or an evidentiary hearing [on this basis]. *People v Hett*, 299 Mich App 69, 80; 829 NW2d 266 (2012). This Court's review is therefore limited to mistakes that are apparent from the record. *Id*." *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018).

To demonstrate ineffective assistance, defendant must show "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. at 51. Effective assistance "is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016).

Preliminarily, the prosecutor notes that although defense counsel did not object to admission of the audio recordings on hearsay grounds, the trial court raised the issue, the prosecutor responded, and the trial court made a determination. Defendant admits that the prosecutor addressed this claim at trial and that the trial court agreed with the prosecutor's rationale. Defendant has not established that raising an objection would have served some further purpose or that it would have led to a different result. Thus, this ineffective assistance claim must fail.

Regarding counsel's stipulation to the prosecutor's request not to produce Kelly at trial, the prosecutor explained that the police had attempted repeatedly to contact Kelly and get her to appear for trial. Detective Johnson testified that he and other officers had attempted to contact Kelly "around ten times"; she told him she would not testify because of her mental health. He also stated that family members had told him that she had been hospitalized for a mental problem. Defense counsel acknowledged that Kelly was having mental problems and that she had refused to come to court. Thus, had defense counsel insisted that Kelly be produced for trial, there is no proof that the police would have been able to produce her.

But more importantly, a trial counsel's decision to present, or not to present, a particular witness is a matter of trial strategy that this Court will not second-guess. *People v Mitchell,* 454 Mich 145, 163; 560 NW2d 600 (1997); *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001). There is no reason to reject that standard in this case. Had defendant insisted that Kelly be produced, her testimony could easily have removed all doubt about what had occurred on April 21, 2016—to defendant's detriment. Defense counsel simply could not have been sure at that point how Kelly would testify. That defendant had remarried her and was living with her post trial, and that she apparently wanted to assist him to overturn his conviction, does not change the situation as it existed on the date of trial or cast doubt on trial counsel's strategic decision not to insist on her production at the trial.

Defendant complains that there was no showing of how many times the police went to Kelly's house to attempt to serve her, whether they attempted to serve her at a relative's house, whether they tried to find her at her place of employment, or whether they determined if she was still in the hospital. However, the prosecutor stated on the initial August 2, 2017 trial date that

> one of the prosecution witnesses, Ms. Kelly Hernandez, was served with a
> subpoena to appear here today and has not appeared. At the time and date the

officers served her with a subpoena, she indicated that she could not testify in this matter.

By way of information that I have both from [defense counsel], as well as from relatives of Ms. Hernandez, as well as Ms. Hernandez herself from the officer in charge, is that she is having issues relating to her mental health, that she was hospitalized for a period of time, that she is currently on a day reporting, and indicated that she would be unavailable to testify. She has not appeared here today according to the subpoena.

Defendant's trial counsel added:

Insofar as the witness situation is concerned, the witness of whom [the prosecutor] speaks is the former wife of the defendant. *The parties are in communication because they have a child in common. They speak to each other.* He has indicated to me, and I've shared this information with [the prosecutor], that she suffered a severe mental breakdown a few weeks ago and was in fact inpatient, hospitalized, and that *she is now on a course of treatment that requires her to be present every day from 9:00 a.m. to 5:00 p.m.*

*It's my further understanding that a good deal of the mental stress that she's under has to do with this case, and that under medical advice she is going to continue to decline to testify.* I'm not sure that we're ever going to—[the prosecutor] is going to be able to surmount that problem. [Emphasis added.]

It is clear from these comments that trial counsel knew that Kelly would not be coming to court to testify. Defendant was in contact with Kelly and was informing trial counsel of her status. Counsel may have thought that forcing her to come to court might well have solidified her opposition to defendant. Until they resolved their differences, Kelly's testimony presented a real danger to defendant. It is certainly true that they subsequently remarried and that she was seeking to assist him when she submitted her affidavit, but it cannot be determined what her state of mind was at the time of trial in 2017. It was therefore presumably an informed strategic decision by trial counsel not to force the prosecutor to produce Kelly at trial and instead to stipulate to her absence. Defendant has failed to show that his counsel performed below an objective standard of reasonableness or that he made an outcome-determinative mistake.

Defendant finally claims that the prosecutor failed to present sufficient evidence that defendant used a computer to commit a crime or possessed child sexually abusive material. These claims are without merit.

This Court reviews sufficiency of the evidence claims

"in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). A prosecutor need not present direct evidence of a defendant's guilt. Rather, "[c]ircumstantial

-8-

evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation marks and citation omitted). [*Williams*, 294 Mich App at 471.]

Defendant does not dispute that the LG cell phone had images of child pornography. He argues that there was insufficient evidence to establish that he possessed the LG cell phone. "[C]ircumstantial evidence and reasonable inferences arising from the evidence are sufficient to establish possession." *People v Fetterley*, 229 Mich App 511, 515; 583 NW2d 199 (1998). Although directed at possession of illegal narcotics, our Supreme Court's observations in *People v Wolfe*, 440 Mich 508, 519-520; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992), are equally applicable here:

A person need not have actual physical possession of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive. Likewise, possession may be found even when the defendant is not the owner of recovered narcotics. Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance. [Citations omitted.]

In this case, defendant's possession of the LG cell phone was demonstrated by his repeated demands that Kelly return "his phone" to him. He made these demands in the context of Kelly accusing him of viewing child pornography on the cell phone. Defendant claimed at trial that he was actually asking Kelly to return his own cell phone to him, but the context of the conversation does not support defendant's claim; in any event, the jury was not compelled to accept defendant's claim. Additionally, when the police arrived, defendant's cell phone was in plain view on the coffee table; defendant picked it up and gave it to the police. By contrast, Kelly had to go to a kitchen cabinet to retrieve the LG cell phone. This was consistent with defendant's demands to have the cell phone given to him, indicating that Kelly had taken it and that he did not know where it was.[1] Defendant's demands that Kelly return "his phone" to him also demonstrated his constructive possession of the LG cell phone with the child pornography. His desperation to get that cell phone back is circumstantial evidence of his knowledge of the

---

[1] Defendant claimed in his trial testimony that Kelly had also taken his personal cell phone and placed it in the bedroom and that she subsequently gave it to him before he called the police. However, the jury was not compelled to believe defendant's version of the events. *Wolfe*, 440 Mich at 514-515, quoting *People v Palmer*, 392 Mich 370, 375-376; 220 NW2d 393 (1974) ("[T]he jury is the sole judge of the facts. It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact. . . . Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony."). Moreover, this Court must judge the facts in a light most favorable to the prosecution. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011).

child pornography that it contained. As our Supreme Court stated in *People v Minch*, 493 Mich 87, 91-92; 825 NW2d 560 (2012):

> This Court has held that for possessory crimes in Michigan, actual possession is not required; constructive possession is sufficient. The test for constructive possession is whether "the totality of the circumstances indicates a sufficient nexus between defendant and the contraband." "Although not in actual possession, a person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion and control over a thing, either directly or through another person or persons…." [Footnotes omitted.]

This Court does not interfere with the jury's determination of the weight or credibility of a witness's testimony. *People v Fletcher*, 260 Mich App 531, 561; 679 NW2d 127 (2004). It is the responsibility of the trier of fact to determine the inferences that may fairly be derived from the evidence and to decide what weight should be accorded to those inferences. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

There was no dispute that there was child pornography on the LG cell phone. The cell phone was a "computer" within the meaning of the statute, MCL 752.792(3), which provides:

> "Computer" means any connected, directly interoperable or interactive device, equipment, or facility that uses a computer program or other instructions to perform specific operations including logical, arithmetic, or memory functions with or on computer data or a computer program and that can store, retrieve, alter, or communicate the results of the operations to a person, computer program, computer, computer system, or computer network.

The testimony also indicates that the images were downloaded between March 26 and April 21, 2016 (the date the police took possession of the cell phone), and that the last images of child pornography were downloaded on April 16 and April 17—a few days before the police seized the cell phone. Defendant's requests to be given back this cell phone circumstantially indicate that he exercised dominion over the cell phone and was thus a constructive possessor of it. Defendant's argument is based on his assertion that the evidence pertaining to the two crimes of which he was convicted "is intertwined." The use of the computer in this case was the use of a smart phone to store the illicit material electronically and thus allow defendant to possess it. This evidence was sufficient to support defendant's conviction of possession of child sexually abusive material. Considered in a light most favorable to the prosecution, there was sufficient evidence to sustain defendant's convictions.

Affirmed.

/s/ David H. Sawyer
/s/ Colleen A. O'Brien
/s/ Anica Letica