*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 20, 2022

Plaintiff-Appellee,

v

No. 353824
Grand Traverse Circuit Court

NICHOLAS DEAN CLARK,

LC No. 19-013382-FH

Defendant-Appellant.

Before: SAWYER, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(c) (sexual penetration of a victim who is physically helpless), for which he was sentenced to 1½ to 15 years in prison. We affirm.

Defendant's conviction arises from the sexual assault of a female associate in July 2014, at a hotel room in Traverse City, where the victim had fallen asleep after becoming intoxicated from alcohol. The victim explained that she, defendant, Wibke Heymache, and others attended a work event in Traverse City. After the event, the group went out drinking and then went to Heymache's hotel room. According to the victim, she was intoxicated when she arrived at the hotel room, became sick, and then laid down on a bed in the room and fell asleep. When she awoke hours later, as it was becoming light outside, she discovered that her pants were unbuttoned and unzipped, and she then noticed that defendant's arm was around her and his hand was underneath her underwear and feeling around inside her vagina. The victim elbowed defendant, who then stopped. After defendant fell asleep, the victim left the room.

The victim told a small group of people—a coworker, a friend, and her boyfriend—what had happened in the days after the assault, but she waited until 2019 to report the assault to the police. During the intervening years, the victim and defendant both accepted employment in Michigan politics/government. Because of their positions before and after the alleged assault, the victim and defendant were often part of the same circles, sometimes attended the same events, and frequently were political rivals.

The defense theory at trial was that the victim's allegations were not credible. The defense questioned the veracity of the victim's claim that she was able to identify defendant as her assailant simply by recognizing his arm. The defense also suggested that the victim's 2019 accusations were politically motivated, and defense counsel accused the victim of being excessively involved in defendant's prosecution to the point that she was "running the show" and was actively involved in organizing a "coalition" of witnesses against defendant and influencing their testimony through her frequent contacts and sharing of police reports. Counsel also argued that there were "a lot of shady things going on behind the scene over here."

## I. OTHER-ACTS EVIDENCE

Defendant first argues that the trial court erred by permitting the other-acts testimony of HK, who testified that she was defendant's former girlfriend and that a few days before the charged assault against the victim, defendant initiated nonconsensual anal sex with HK while HK was sleeping. At trial, the parties and the court relied solely on MRE 404(b)(1) as permitting the introduction of this evidence.[1] MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"Of these theories, only one needs to be a proper, noncharacter reason that compels admission for the testimony to be admissible." *People v Starr*, 457 Mich 490, 501; 577 NW2d 673 (1998). Further, although MRE 404(b)(1) provides examples of permissible uses of other-acts evidence, the list is not exhaustive. *People v Watson*, 245 Mich App 572, 576-577; 629 NW2d 411 (2001).

"At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other acts evidence as long as it is not being admitted solely to demonstrate criminal propensity." *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002); see also *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010) ("the rule is not exclusionary, but is inclusionary"). Other-acts evidence is admissible under MRE 404(b)(1) if it is (1) offered for a proper purpose, i.e., one other than to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, MRE 401, and (3) its probative value is not substantially outweighed by

---

[1] We agree with plaintiff that the trial court erred by ruling that MCL 768.27b was not applicable. This statute was amended by 2018 PA 372, effective March 17, 2019, to expressly extend its scope to evidence of other sexual assaults. Even though the charged criminal activity occurred in 2014, MCL 768.27b "applies to trials and evidentiary hearings commenced or in progress on or after May 1, 2006." MCL 768.27b(7). Although we conclude that the trial court did not abuse its discretion by admitting the disputed evidence under MRE 404(b)(1), we note that MCL 768.27b would have provided an independent basis for admitting HK's challenged testimony.

the danger of unfair prejudice under MRE 403. *Starr*, 457 Mich at 496; *People v VanderVliet*, 444 Mich 52, 55, 63-64, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

The prosecution offered the evidence of defendant's assault of HK as proof of defendant's " 'intent,' 'scheme, plan, or system in doing an act,' 'knowledge,' 'identity,' and/or 'absence of mistake or accident.' " The prosecutor argued that the evidence was relevant to show a common plan, scheme, or system of sexually assaulting females who knew defendant, while they were sleeping, and that the timing of the uncharged act, just a few days before the charged offense, enhanced its probative value. The prosecutor also argued that the evidence was probative of defendant's identity as the perpetrator of the assault against the victim, and to refute any claim that the victim was mistaken in her identification of defendant. The prosecution further argued that the evidence was probative of whether defendant acted intentionally and whether he knew that the victim was physically helpless. Similar to the observation in *Starr*, 457 Mich App at 501, "[t]hese were legitimate, material, and contested grounds on which to offer the evidence because, in this case, defendant entered a general denial. Defendant's general denial placed all elements of his CSC charges at issue." After a hearing to determine the admissibility of the other-acts evidence, the trial court allowed HK to testify "as evidence of a method or way of doing things."

With respect to whether the assault of HK supported a finding that defendant had a common plan, "evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). "There must be such a concurrence of common features that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design." *People v Steele*, 283 Mich App 472, 479, 769 NW2d 256 (2009). "A high degree of similarity is required—more than is needed to prove intent, but less than is required to prove identity—but the plan itself need not be unusual or distinctive." *People v Smith*, 282 Mich App 191, 196; 772 NW2d 428 (2009). However, "[t]he evidence of uncharged acts "needs only to support the inference that the defendant employed the common plan in committing the charged offense.' " *Steele*, 283 Mich App at 479 (citation omitted).

In *Smith*, this Court, while also discussing *Sabin*, addressed what constitutes sufficient commonality to support using a prior assault as evidence of a plan, stating:

> In *Sabin*, the Supreme Court found that the defendant's sexual assault of his stepdaughter shared sufficient features in common with the defendant's assault of his daughter to infer a plan, scheme, or system. *Sabin*, *supra* at 66. Beyond both being acts of sexual abuse, the victims were of similar age, both were in a father-daughter relationship with the defendant, and defendant allegedly played on their fear of breaking up the family in order to keep them silent. *Id*. The Court noted that although there were some differences between the acts, such as the type of sexual assault (intercourse vs. cunnilingus), the time of day of the assaults (afternoon vs. nighttime), and the frequency of the assaults (once vs. a weekly pattern), the Court agreed that reasonable persons could differ concerning whether the charged act and the prior bad acts were sufficiently similar to infer the existence of a common system, plan, or scheme. *Id*. at 67. However, the Court noted that

there is no abuse of discretion if an evidentiary question is a close one, and upheld the trial court's decision. *Id*. at 67-68.

In the present case, both victims were approximately the same age at the time of the events, and both were in a father-daughter relationship with defendant. The evidence supports a finding that the charged and the uncharged acts were part of defendant's common plan or system to act out sexually with preteen girls living in the same household, over whom he had parental authority. As in *Sabin*, there were also some differences between the acts. The prior bad acts against LL involved incidents of indecent exposure, whereas the charged acts in this case involved intercourse and sexual contact. There was no evidence that LL was warned not to disclose the acts, whereas the victim in this case was told not to say anything. It appears that others persons were present in the home during two of the three indecent exposure incidents with LL, whereas defendant was alone with the victim during the charged acts. However, these differences do not compel the conclusion that the charged and the uncharged acts were so dissimilar that they precluded admission for purposes of showing a common plan or system. As in *Sabin*, reasonable persons could disagree concerning whether the charged acts and the prior bad acts were sufficiently similar to show (by probability) the existence of a scheme, plan, or system that tends to prove (by probability) that the charged acts were committed. Because the evidentiary issue was a close one, the trial court did not abuse its discretion in admitting the evidence of defendant's prior acts of indecent exposure. [*Smith*, 282 Mich App at 196-197.]

Applying this rationale to the instant case, we agree that the prosecutor demonstrated sufficient indicia of commonality between the prior assault of HK and the charged offense to show the existence of a common system, plan, or scheme. In both instances, defendant engaged in unwelcomed sexual penetration of women with whom he had either a friendship or romantic relationship, and he initiated the sexual activity while the women were asleep next to him. His actions showed a common plan of exploiting a relationship to surprise a helpless victim to engage in sexual penetration. Although there were some differences between the two incidents, there were sufficient common features for reasonable persons to infer the existence of a common plan or method. Also, the evidence was relevant to show that defendant did not accidentally or mistakenly touch the victim. Therefore, the trial court did not abuse its discretion by finding that the evidence was admissible for a proper, noncharacter purpose.

With respect to whether the prejudicial effect of the evidence substantially outweighed its probative value, evidence is not unfairly prejudicial under MRE 403 merely because it is damaging to a party's case. *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). Evidence is unduly prejudicial if it has "an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." *Id*. See also *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005), in which this Court observed:

Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury. This unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position

by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock. [Quotations and citations omitted.]

In this case, the probative value of the evidence was enhanced by the fact that defendant denied any wrongdoing and alleged that the victim fabricated her claim that defendant inappropriately touched her. HK's account may have had a tendency to invoke some sympathy, but it also involved activity against a person who was defendant's girlfriend at the time, while the two had been sleeping together, so it was less likely to invoke shock or outrage, and HK's testimony was not so detailed or outrageous as to cause a likelihood that the jury would not be able to consider the evidence for its proper purposes. In addition, the trial court instructed the jury on the limited, permissible purpose of the evidence, and also instructed the jury that it must not allow sympathy or prejudice to influence its decision. These instructions, which the jury is presumed to have followed, *People v Roscoe*, 303 Mich App 633, 646; 846 NW2d 402 (2014), mitigated any potential for unfair prejudice.

Accordingly, the trial court did not abuse its discretion by admitting the other-acts evidence of defendant's assault of HK.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence was insufficient to support his conviction. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 330 Mich App 41, 46; 944 NW2d 370 (2019). "Evidence is sufficient if, when viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (quotation marks and citation omitted). "Direct and circumstantial evidence, including reasonable inferences arising from the use of circumstantial evidence, may provide sufficient proof to meet the elements of a crime." *Bailey*, 330 Mich App at 46. In a case involving criminal sexual conduct, it is well established that "[t]he victim's testimony alone can provide sufficient evidence to support a conviction." *People v DeLeon*, 317 Mich App 714, 719; 895 NW2d 577 (2016).

Defendant was convicted of violating MCL 750.520d(1)(c), which prohibits a person from engaging in sexual penetration with a victim who the person knows or has reason to know is physically helpless. Defendant does not argue that the evidence was insufficient to establish the elements of this crime. Instead, he argues that the evidence was insufficient to prove his identity as the person who assaulted the victim. Identity is an essential element of every offense. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976).

In this case, the victim testified that she recognized her assailant's arm as defendant's arm, and she explained the bases for this belief. In addition to this identification testimony, the victim testified that she later confronted defendant about his conduct and he responded that they "did not do that much." Defendant's response allowed the jury to infer that he tacitly admitted that he was the person in the bed beside the victim and had touched her. Defendant's identification was also supported by the testimony of Wibke Heymache, who testified about the locations of everyone in

the hotel room. According to Heymache, when the others returned to the room, defendant laid down on the bed next to the victim. The victim's identification testimony, defendant's statements, and Heymache's testimony, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to find beyond a reasonable doubt that defendant was the person lying in the bed next to the victim who reached over her body and digitally penetrated her vagina. Although defendant argues that there were inconsistencies in the victim's account of the assault and contends that her later conduct was inconsistent with a person who had been sexually assaulted, these were matters that related to the credibility and weight of her testimony, which were for the jury to resolve. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

In sum, sufficient evidence supports defendant's conviction of CSC-III.

### III. HEARSAY

Defendant argues that he was denied a fair trial by the introduction of numerous inadmissible hearsay statements. We disagree.

Defendant preserved this claim of error as it relates to the admissibility of the victim's statements regarding the assault, which she made to a coworker, her friend, and her boyfriend within days after the charged offense. We review the trial court's decision to allow evidence for an abuse of discretion. *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). "Because an abuse of discretion standard contemplates that there may be more than a single correct outcome, there is no abuse of discretion where the evidentiary question is a close one." *Smith*, 282 Mich App at 194.

Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). A "statement" is "(1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion." MRE 801(a). Hearsay is generally inadmissible absent an exception. MRE 802. However, MRE 801(d)(1)(B) provides that a statement is not hearsay if it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive."

In this case, the trial court found that the victim's prior statements describing the assault, which she made to a coworker, a friend, and her boyfriend within days after the assault, were admissible as prior consistent statements under MRE 801(d)(l)(B). A statement is admissible under MRE 801(d)(1)(B) if four elements are satisfied:

> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. [*People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000) (citations omitted).]

As the trial court noted, the defense implied that the charged offense did not actually occur and the reason for the victim's delayed accusation was because the victim and defendant had become political rivals. The defense highlighted the victim's and defendant's opposing stances concerning a pipeline and the timing of the victim's police report in relation to events involving that matter. The victim was subject to cross-examination at trial concerning her statements to her coworker, friend, and boyfriend, and the three were also subject to cross-examination regarding the victim's statements. The testimony of the three witnesses regarding what the victim told them differed in some respects, but the essence of the recalled statements—that defendant had sexually assaulted the victim while she was sleeping—were the same. These statements were consistent with the victim's trial testimony, and the statements were made in 2014, well before any political motive for fabricating the allegations arose in 2019. The trial court did not abuse its discretion by admitting these statements as prior consistent statements, a nonhearsay purpose.

Defendant raises a number of additional challenges to the admissibility of the challenged statements to these witnesses, and other testimony, which he did not raise below. For example, he argues that it was improper "bolstering" to permit the victim to provide detail of her purported conversations with her coworker, friend, and boyfriend, as well as to others. He also argues, for example, that the victim should not have been permitted to testify that she had told her supervisor what had happened. He further argues that various witnesses, such as her coworker, should not have been permitted to testify about the victim's appearance while telling them about the assault. Moreover, defendant claims that HK should not have been allowed to testify about defendant's assault against her, and defendant takes specific issue with HK's testimony that one of the reasons she told the victim what had happened to her was that "[i]t felt like if there is two things that happened and they were similar for two women how many women are there." Defendant did not object to any of the challenged statements on these grounds below. "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996). Accordingly, these additional claims are unpreserved. As such, review is limited to plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Defendant has the burden of demonstrating that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected his substantial rights, i.e., the error affected the outcome of the lower court proceedings. *Id*.

Defendant does not develop any of these additional claims of error. He does not explain how the prosecutor improperly "bolstered" the victim's testimony merely by allowing her to testify about her previous conversations. Defendant also does not explain, for example, how any other challenged statements would or would not qualify as hearsay or, except for the assertion by HK, does not even provide the substance of the allegedly improper testimony. Further, defendant does not address whether any of the alleged statements might be admissible under an applicable hearsay exception. With respect to HK's assertion, defendant does not explain why her response should be considered improper, or whether it could be considered harmless as a nonresponsive answer to a proper question by the prosecutor. An appellant may not merely "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006) (quotation marks and citation omitted). We conclude that defendant has abandoned his additional claims of error by failing to adequately brief them.

## IV. ADMISSIBILITY OF E-MAIL EVIDENCE

Defendant next argues that the trial court erred by admitting an e-mail that the victim allegedly sent to defendant in June 2016. The e-mail simply stated, "You should read this if you haven't been following it," and it contained a link to a news article about a college athlete who was found guilty of sexually assaulting an intoxicated woman who was unconscious. The prosecutor offered the e-mail to rebut the defense implication that political events in 2019 caused the victim to fabricate the assault allegations. Defendant argued below that this evidence was not admissible because it was not timely disclosed, it was irrelevant, it constituted inadmissible hearsay, and a proper foundation for its admission had not been established. Accordingly, defendant's appellate challenges on these grounds are preserved. However, defendant did not argue below that the evidence was inadmissible because it did not comply with the best-evidence rule, or because it should be excluded under MRE 403, leaving these appellate arguments unpreserved. *Asevedo*, 217 Mich App 398. We review defendant's preserved evidentiary claims for an abuse of discretion, *Crawford*, 458 Mich at 383, and review his unpreserved claims of error for plain error affecting his substantial rights, *Carines*, 460 Mich at 763.

## A. FOUNDATION

Defendant argues that the prosecutor did not establish an adequate foundation for admission of the e-mail. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). "Under MRE 901(a), to authenticate a piece of evidence, the proponent of that evidence bears the burden of bringing forth evidence sufficient to support a finding that the matter in question is what its proponent claims." *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 155; 908 NW2d 319 (2017) (quotation marks and citation omitted). However, "[i]t is axiomatic that proposed evidence need not tell the whole story of a case, nor need it be free of weakness or doubt. It need only meet the minimum requirements for admissibility." *People v Berkey*, 437 Mich 40, 52; 467 NW2d 6 (1991). The evidentiary rules do not require a proponent to sustain his burden in any particular way. *Mitchell*, 321 Mich App at 155. "Indeed, evidence supporting authentication may be direct or circumstantial and need not be free of all doubt." *Id*. (citations omitted). One of the methods of authentication or identification listed in MRE 901(b)(1) is testimony by a witness with knowledge that a matter is what it is claimed to be.

In this case, the prosecution offered the e-mail sent by the victim to defendant on June 4, 2016, to rebut the defense claim that events in 2019 caused her to fabricate the allegations against defendant. The victim testified that she was familiar with defendant's e-mail account and that she sent the e-mail in question to defendant's e-mail address on June 4, 2016. The exhibit itself contains the victim's and defendant's respective e-mail addresses and is dated June 4, 2016. This is sufficient to authenticate the e-mail as having been sent from the victim to defendant's e-mail account on the date indicated. Defendant remained free to maintain that he did not read it. However, the trial court properly overruled defendant's objection to the admissibility of the e-mail document on foundational grounds. Defendant does not challenge whether the accompanying news article was properly authenticated, but it would be self-authenticating under MRE 902(6) (providing for self-authentication of "[p]rinted materials purporting to be newspapers or periodicals").

## B. HEARSAY

Defendant next argues that the e-mail was inadmissible hearsay. We disagree. Initially, only "statements" can qualify as hearsay, MRE 801(c), and a "statement" is "(1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion," MRE 801(a). Commands are not hearsay because they do not involve an assertion. See *People v Bennett*, 290 Mich App 465, 483; 802 NW2d 627 (2010) (holding that a statement to "tell the truth" was "not hearsay because it did not contain an assertion; it was a command"). Similarly, in this case, the victim's statement to defendant, "You should read this if you haven't been following it," is not an assertion. It is a command that is incapable of being true or false. Therefore, it is not hearsay. We also reject defendant's suggestion that the evidence involved "hearsay within hearsay" because the news article was hearsay. The article was not offered to prove the truth of the content of the article. It was offered to show that the victim had confronted defendant in June 2016 about a similar report of sexual misconduct, thereby rebutting defendant's implied assertion that events in 2019 caused the victim to fabricate her allegations against defendant. Thus, the e-mail exhibit did not involve inadmissible hearsay.

## C. RELEVANCE

Defendant also argues that the e-mail and accompanying news article should not have been admitted because they were not relevant. We disagree. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. The e-mail was relevant for several reasons. Primarily, as discussed earlier, the e-mail was relevant to rebut the defense's claims that the victim was lying about the assault and that her accusations were motivated by political events in 2019. It was also relevant to rebut the defense's claims that all of the victim's interactions with defendant before she made her police report in 2019 were relatively civil, and were inconsistent with someone who allegedly had been sexually assaulted. Therefore, the trial court did not abuse its discretion by overruling defendant's relevancy objection. See *People v King*, 297 Mich App 465, 476; 824 NW2d 258 (2012) ("evidence is relevant when it affects the credibility of the victim").

## D. LATE PRODUCTION

Defendant also argues that the trial court should have excluded this evidence because it was not provided to the defense until shortly before trial. MCR 6.201(J) provides a trial court with discretion to fashion an appropriate remedy, including exclusion of evidence, for a discovery violation. However, exclusion of evidence is "an extreme sanction that should not be employed if the trial court can fashion a different remedy that will limit the prejudice to the party injured by the violation." *People v Rose*, 289 Mich App 499, 526; 808 NW2d 301 (2010).

The e-mail consists of a short line of text and contains a reference to a news article. The e-mail was relevant because of its timing and because the victim sent it to defendant. Its relevancy did not depend on whether defendant actually received or read it. Defense counsel acknowledged receiving the e-mail the week before trial started, leaving ample time for the defense to review the evidence and prepare to address it. And while defendant objected to the late production, he did

not identify how he was prejudiced by the delay.  Under the circumstances, the trial court did not abuse its discretion by failing to exclude the e-mail as a discovery sanction.

## E.  THE "BEST-EVIDENCE" RULE

Defendant argues in passing that the e-mail should not have been admitted because the prosecution did not present the "original" news article.  This argument, apart from not having been preserved below, is without merit.  MRE 1002 provides:

> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute.

However, MRE 1001(3) provides in part that "[i]f data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.' "  Moreover, MRE 1003 provides that a "duplicate"[2] "is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."  Defendant did not raise any question at trial regarding whether the article was genuine, and did not present any argument that it would be unfair to consider a copy of the article.  Either as an original or a duplicate, defendant has not established any error arising from the introduction of the news article associated with the link in the disputed e-mail.

## F.  UNFAIR PREJUDICE

Defendant also argues that the trial court should have excluded the e-mail exhibit under MRE 403 because it was substantially more prejudicial than probative.  We disagree.  Defendant asserts that the e-mail was prejudicial, confusing, and misleading because it referred to a news story about an unrelated sexual assault involving persons with no connection to this case.  With respect to defendant's claim of unfair prejudice, the test for exclusion under MRE 403 is not whether evidence is harmful to a party's case, but whether it is unfairly prejudicial.  *Vasher*, 449 Mich at 501.  There was no suggestion at trial that defendant was a subject of the news article.  The victim acknowledged that the article did not directly relate to defendant's assault, and explained that she sent it to defendant only because she felt that she had been affected by defendant's conduct in a way similar to that as recounted by the victim in the article.  There was no reasonable likelihood that the jury would have been confused or somehow misled into believing that the article referred to defendant.  Although the victim's testimony explaining why she sent the article to defendant could have elicited sympathy from the jury, the victim provided other testimony about how the sexual assault affected her.  Moreover, the timing of the e-mail was highly probative to rebut the defense's claims that the victim's allegations were motivated by political events in 2019, and that the victim's interactions with defendant before 2019 were inconsistent

---

[2] MRE 1001(4) provides that a duplicate is "a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques, which accurately reproduces the original."

with a person who had been sexually assaulted. In addition, the trial court instructed the jury that it must not let sympathy or prejudice influence its decision. This instruction, which the jury is presumed to have followed, *Roscoe*, 303 Mich App at 646, was sufficient to protect defendant's substantial rights. Defendant has not demonstrated that the evidence was required to be excluded because its prejudicial effect substantially outweighed its probative value.

For all of the foregoing reasons, we reject this claim of error.

## V. PROSECUTOR'S CONDUCT

Defendant argues that reversal is required because of improper remarks by the prosecutor during closing argument. We disagree. Defendant acknowledges that there was no objection at trial to any of the challenged remarks. Therefore, these claims of misconduct are unpreserved. We review unpreserved claims of prosecutorial misconduct for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

As explained in *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007):

[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. The propriety of a prosecutor's remarks depends on all the facts of the case. A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel. [Quotations and citation omitted.]

## A. VOUCHING FOR WITNESSES

Defendant argues that the prosecutor improperly used the prestige of his office and injected his personal opinion of the victim's veracity by repeatedly asking the jury during closing argument what reason the victim would have to lie. We disagree.

A prosecutor has wide latitude during closing argument and may argue the facts and reasonable inferences arising therefrom, and need not confine his arguments to the blandest possible terms. *Dobek*, 274 Mich at 66; *People v Aldrich*, 246 Mich App 101, 112, 631 NW2d 67 (2001). It is well settled that a prosecutor is free to argue from the facts that a witness should or should not be believed. *McGhee*, 268 Mich App at 630. A prosecutor is also permitted to "comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). However, a prosecutor is not permitted to vouch for the credibility of a witness by implying that he possesses "special knowledge" of the witness's truthfulness. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009); *McGhee*, 268 Mich App at 630.

In the instant case, defendant presents no legal support for the proposition that a prosecutor's repetition of an argument or repeated references to testimony equates to an attempt to use the prestige of the prosecutor's office to obtain a conviction. In the challenged remarks, the prosecutor argued that the victim did not have a motive to lie. The remarks did not suggest that the prosecutor was attempting to use the prestige of his office to obtain a conviction, or that he had special knowledge of the victim's veracity or defendant's guilt. The prosecutor did not refer to himself in the comments, or claim that other evidence not presented to the jury supported defendant's conviction. Instead, the prosecutor asked the jury to think about the victim's demeanor, and ask why she would have fabricated the assault and then immediately told her friend, coworker, and boyfriend, or argued that people usually have a reason to lie and that no reason for the victim to do so had been presented during trial. The prosecutor's remarks were not improper.

Defendant also argues that the prosecutor improperly shifted the burden of proof when he stated, "At the beginning I asked you to consider throughout the entirety of the evidence you heard whether there is any motive, I don't believe you heard any motive to make this up, either then when she told her friends or now." Although a prosecutor may not use a defendant's failure to present evidence as substantive evidence of the defendant's guilt, a prosecutor is entitled to comment on defense theories or the strength of evidence presented by the defendant. *People v Caddell*, 332 Mich App 27, 71-72; 955 NW2d 488 (2020). The prosecutor does not err by commenting on a defendant's failure to produce evidence in support of a defense on which the defendant is relying. *People v Fields*, 450 Mich 94, 111 n 21; 538 NW2d 356 (1995). In this case, defense counsel argued in his opening statement that the victim's late revelation was because of outside influences, such as whether the victim and the defendant were on opposing political sides of a controversial issue or whether the victim simply wanted to be part of the "Me Too" movement. The prosecutor was entitled to argue that no competent evidence had been presented to support the defense's claim that the victim had an ulterior motive to lie about the assault. The prosecutor was merely commenting on the weakness of the defense theory. This argument did not improperly shift the burden of proof to defendant.

## B. DENIGRATION OF DEFENDANT OR DEFENSE COUNSEL

Defendant argues that the prosecutor improperly denigrated him by accusing him of playing dumb, and that the prosecutor inaccurately stated that he had admitted wrongdoing. Defendant also argues that the prosecutor improperly denigrated defense counsel while discussing the difficulties faced by the victim and HK. We again disagree.

Although a prosecutor may not personally attack the credibility of defense counsel, *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003), comment on facts not in evidence or mischaracterize the evidence, *People v Unger*, 278 Mich App 210, 241; 749 NW2d 272 (2008), the record does not support defendant's argument that the prosecutor engaged in such conduct in this case. The prosecutor's comments that defendant "played dumb" when the victim first confronted him, but then "admit[ed] what he did" were supported by the victim's testimony that, when confronted, defendant initially maintained that he did not know what the victim was talking about, but then stated, "Well, we didn't do that much." After the victim responded by stating that "they" did not do anything because she was asleep, defendant became quiet and "choked up," and asked the victim if she was okay. The prosecutor's remarks were proper comments on this testimony.

-12-

We also disagree with defendant's argument that the prosecutor improperly denigrated defense counsel during closing argument. Viewing the challenged remarks in context, the prosecutor was responding to the testimony and defense counsel's questioning of the victim and HK to argue that the manner in which they reacted while in defendant's presence over the years after the alleged assaults did not mean that the assaults did not occur. Contrary to what defendant argues, the prosecutor did not state that defense counsel or the defense investigator were "prejudiced" against the victim, but rather advanced an argument that they were relying on a prejudicial or outdated way of believing how a victim of sexual misconduct must always behave or react to be deemed credible. This argument fit the facts and defense counsel's questioning of why the victim would continue to interact with defendant and why HK did not immediately break up with defendant after he assaulted her. This was proper commentary on the evidence and the defense theories presented at trial.

We also note that the trial court instructed the jury that it must decide the case on the basis of the evidence, and that the remarks and arguments of the attorneys are not evidence. This instruction was sufficient to eliminate any perceived prejudice that may have resulted from the prosecutor's remarks. *Thomas*, 260 Mich at 444.

Defendant also raises a related claim of ineffective assistance of counsel for defense counsel's failure to object to the prosecutor's remarks. However, because we have concluded that the prosecutor's remarks were not improper, and because a defense attorney is not ineffective for failing to make meritless or futile objections, *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), this ineffective assistance claim cannot succeed.

## VI. SCORING OF THE SENTENCING GUIDELINES

Defendant argues that he is entitled to resentencing because the trial court erred by assessing 25 points for offense variable (OV) 13 of the sentencing guidelines. We disagree.

When reviewing a trial court's scoring decision, "the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *Blevins*, 314 Mich App at 348-349. "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

"When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The trial court may also consider a victim-impact statement or other statements or letters submitted to the court for consideration. *People v McFarlane*, 325 Mich App 507, 532; 926 NW2d 339 (2018); *People v Earl*, 297 Mich App 104, 110; 822 NW2d 271 (2012). When reviewing the evidence, a trial court may make "reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *Id.* at 109.

As relevant to this case, a trial court may not rely on acquitted conduct during sentencing. *People v Beck*, 504 Mich 605, 626; 939 NW2d 213 (2019). However, "[a] trial court may consider facts concerning uncharged offenses [and] pending charges, . . . provided that the defendant is afforded the opportunity to challenge the information and, if challenged, it is substantiated by a preponderance of the evidence." *People v Golba*, 273 Mich App 603, 614; 729 NW2d 916 (2007); see also *Beck*, 504 Mich at 626 ("When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard.").

OV 13 considers a defendant's "continuing pattern of criminal behavior." MCL 777.43. 25 points are to be assessed where "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). In determining the appropriate number of points under this variable, "all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." In the instant case, in addition to the instant offense, the trial court also relied on HK's testimony regarding defendant's sexual assault of her that occurred a few days before the assault against the victim. In addition, the trial court relied on evidence that defendant committed a sexual assault against another girlfriend, MM, in 2013.

At trial, HK testified that defendant engaged in anal intercourse with her when she was still mostly asleep and did not stop when she told him that she did not want to continue. MM's account of defendant's assault against her was discussed both before trial and at sentencing. In support of a pretrial motion to admit MM's testimony as other-acts evidence at trial, the prosecutor submitted a police report in which MM recounted that, in the spring of 2013, she and defendant were together on a couch when defendant straddled MM and forced her to perform oral sex on him after she had initially refused. Also, before defendant's sentencing, MM provided a letter to the trial court in which she provided a substantially similar account of that incident. Defendant had the opportunity at sentencing to contest whether MM wrote the letter or to object to her factual allegations, but did not do so. Instead, defense counsel argued that the acts involving MM and HK were not criminal because the women were involved in a consensual relationship with defendant when the acts occurred, and because the women did not report defendant's conduct to the police until years later. The trial court overruled defendant's objections and scored OV 13 at 25 points.

Defendant has not cited any legal authority supporting his position that a person must be subject to cross-examination for a court to be able to rely on the person's statement when determining a sentence. We note, however, that HK's allegations were presented at trial and defendant had the opportunity to cross-examine her regarding those allegations. Defendant did not request an opportunity to cross-examine MM, but merely argued that her allegations did not establish any criminal conduct. The fact that neither HK nor MM pursued criminal charges against defendant is not controlling because the trial court was permitted to consider uncharged offenses. *Beck*, 504 Mich at 626; *Golba*, 273 Mich App at 614. Further, despite that defendant was involved in relationships with the women at the time, both women claimed that the sexual acts committed by defendant were nonconsensual. Their accounts of defendant's conduct were sufficient to show that defendant engaged in sexual penetration with them by force or coercion, thereby committing CSC-III, MCL 750.520d(1)(b), which qualifies as an offense against a person for purposes of scoring the sentencing guidelines, MCL 777.16y. According to their accounts, the offenses against them were committed in 2013 and 2014, and the instant offense was also committed in 2014. Thus,

-14-

a preponderance of the evidence supports the trial court's finding that the instant offense was "part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). Therefore, the trial court did not err by assessing 25 points for OV 13.

## VII. CUMULATIVE ERROR

Defendant also argues that even if one error does not require reversal, the cumulative effect of the many errors denied him a fair trial. Although "[t]he cumulative effect of a number of errors may amount to error requiring reversal," *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002), quoting *People v Cooper*, 236 Mich App 643, 659-660; 601 NW2d 409 (1999), "only actual errors are aggregated to determine their cumulative effect." *Leblanc*, 465 Mich at 591 n 12, quoting *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995). Because defendant has not demonstrated any individual errors, he is not entitled to relief on this basis.

Affirmed.

/s/ David H. Sawyer
/s/ Deborah A. Servitto
/s/ Michelle M. Rick